## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: HON. GARY S. KATZMANN, *JUDGE*

| | | |
|---|---|---|
| AMCOR FLEXIBLES KREUZLINGEN AG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 16-00193 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

By:    /s/ Wm. Randolph Rucker

Dated: June 7, 2021            Wm. Randolph Rucker

**FAEGRE DRINKER BIDDLE & REATH LLP**

Attorneys for Plaintiff
Amcor Flexibles Kreuzlingen AG
191 N. Wacker Drive
Suite 3700
Chicago, IL 60606
Telephone (312) 569-1000

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

SUMMARY OF THE ARGUMENT ................................................................... 1

ARGUMENT ...................................................................................................... 2

   I.    Defendant Is Not Entitled to Summary Judgment in this Case ................... 2

   II.   Defendant's Response to Plaintiff's Statement of Facts is Unduly
       Argumentative ........................................................................................... 3

   III.   Defendant Has Not Established that the Subject Flexible Packaging Materials
       Are Properly Classified under Heading 7607 ............................................ 6

       a.    The Defendant Misapplies Case Law Precedent Classifying Other
           Flexible Packaging Materials .......................................................... 6

           1.    The Court's Decision in *Amcor Singen* Does Not Demonstrate that
              the Subject Packaging Materials Are Classified under Heading
              7607 ...................................................................................... 7

           2.    The Defendant Misconstrues the Court's Decision in *Alcan Food
              Packaging* .......................................................................... 11

       b.    The Subject Packaging Materials Are Labels Excluded from Heading
           7607 by the ENs .......................................................................... 14

       c.    Defendant Fails to Properly Define and Differentiate the Terms of
           Subheading 7607.20.10 .................................................................. 20

   IV.   Defendant Has Not Established that the Subject Flexible Packaging Materials
       Are Not Classified under Heading 4911 ................................................... 28

       a.    Defendant Improperly Limits the Definition of "Printed Matter" of
           Heading 4911 .............................................................................. 28

       b.    Defendant's Attempt to Distinguish the *Aero Rubber* Case Is Misguided ....... 33

   CONCLUSION .................................................................................................. 42

# TABLE OF AUTHORITIES

**Cases**

*Alcan Food Packaging (Shelbyville) v. United States*, 771 F.3d 1364 (Fed. Cir. 2014) ....... passim

*Alcan Food Packaging*, 929 F. Supp. 2d 1338 (Ct. Int'l Trade 2013) *aff'd*, 771 F.3d 1364 (Fed. Cir. 2014) ................................................................................................................ 9, 11, 35

*Allstar Marketing Group, LLC v. United States*, 211 F. Supp. 3d 1319 (Ct. Int'l Trade 2017) .. 26, 27

*Amcor Flexibles Singen Gmbh v. United States*, 425 F. Supp. 3d 1287 (2020) ................... passim

*Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361 (Ct. Int'l Trade 1999) ..................... 13

*Deckers Outdoor Corp. v. United States*, 714 F.3d 1363 (Fed. Cir. 2013) ..................... 25, 26, 27

*Deckers Outdoor Corp. v. United States*, 752 F.3d 949 (Fed. Cir. 2014) ................................... 33

*Ferring B.V. v. Barr Labs.*, 437 F.3d 1181 (Fed. Cir. 2006) ......................................................... 2

*H.I.M./Fathom, Inc. v. United States*, 981 F. Supp. 610 (Ct. Int'l Trade 1997) .......................... 15

*King v. Erickson*, 89 F.3d 1575 (Fed. Cir. 1996), *rev'd sub nom. on other grounds*, 522 U.S. 262 (1998) ...................................................................................................................................... 31

*Marubeni Am. Corp. v. United States*, 821 F. Supp. 1521 (CIT 1993) ....................................... 29

*Maxcell Biosciences Inc. v. United States*, 533 F. Supp. 2d 1261 (Ct. Int'l Trade 2007) ........... 18

*Mead Corp. v. United States*, 283 F.3d 1342 (Fed. Cir. 2002) ............................................. 21, 25

*Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557 (Fed. Cir. 1993) ............................................. 8, 33

*Meyer Corp. v. United States*, 255 F. Supp. 3d 1348 (Ct. Int'l Trade 2017) .............................. 23

*Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048 (Ct. Int'l Trade 1988) *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) ............................................................................................................................ 2

*Quaker Pet Group, LLC v. United States*, 287 F. Supp. 3d 1348 (Ct. Int'l Trade 2018) ............. 16

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ......................................................................... 26

*Richards Med. Co. v. United States*, 910 F.2d 828 (Fed. Cir. 1990) .......................................... 16

*Roche Vitamins, Inc. v. United States*, 772 F.3d 728 (Fed. Cir. 2014) ....................................... 15

*Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354 (Fed. Cir. 2001) .................................. 23

*Russello v. United States*, 464 U.S. 16 (1983) ........................................................................... 26

*Saab Cars USA, Inc. v. United States*, 434 F.3d 1359 (Fed. Cir. 2006) ........................................ 2

*Smith v. Orr*, 855 F.2d 1544 (Fed.Cir.1988) .............................................................................. 31

**Statutes**

1 U.S.C. § 1 ........................................................................................................................... 22, 23

Chapter 48, Note 12 .................................................................................................................... 23

Chapter 76, Note 1(d) ............................................................................ passim
Section VII, Note 2 ................................................................................ passim
Subheading 7607.20.50 ……………………………………………………… passim
Subheading 7607.20.50............................................................................ passim

**Other Authorities**

4820 ENs ...................................................................................................... 30
4821 ENs ................................................................................................ 18, 30
4823 ENs ...................................................................................................... 30
4905 ENs ...................................................................................................... 30
4908 ENs ...................................................................................................... 30
4911 ENs ...................................................................................................... 30
7410 ENs ................................................................................................ 15, 30
7607 ENs ................................................................................................ passim
9704 ENs ...................................................................................................... 31
Chapter 49 General ENs ........................................................................ passim
Chapter 72 General ENs ...................................................................... 13, 14
Dictionary.com, Pre-fabricate, available at https://www.dictionary.com/browse/prefabricated (last
    visited May 21, 2021) ......................................................................... 3, 1
Headquarters Ruling Letter ("HQ") 956733 (Feb. 10, 1995) ...................... 18
Headquarters Ruling Letter 963711 (June 12, 2001).................................... 19
New York Ruling Letter I82484 (May 24, 2002) ........................................ 17

**Rules**

USCIT R. 56 ................................................................................................... 1

## INTRODUCTION

Amcor Flexibles Kreuzlingen AG ("Amcor Kreuzlingen" or "Plaintiff") submits this response to the Cross-Motion for Summary Judgment ("Defendant's Motion" or, for citations, "Def. MSJ") of the United States ("Defendant") pursuant to Rule 56. USCIT R. 56. The parties agree that summary judgment is appropriate in this case because there are no genuine issues of material fact in dispute. The only issue before this Court is the proper legal interpretation of the competing tariff provisions as applied to the undisputed facts. For the reasons below and in Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion," or for citations "Pl. MSJ"), Plaintiff is entitled to judgment as a matter of law in this case.

## SUMMARY OF THE ARGUMENT

First, Defendant is not entitled to Summary Judgment in this case because it provided little evidence to support the material facts it "disputed" in Plaintiff's SMF. However, even where it did dispute facts and provide evidentiary support for this dispute, those disputed facts are not material and, in fact, the parties agree on many underlying facts that determine the tariff classification of the subject flexible packaging materials.

Second, Defendant failed to establish that the subject merchandise is properly classified under Heading 7607. Its primary support for such a classification, two previous cases involving Plaintiff's sister companies, are distinguishable based on the facts and legal issues at issue in this case versus those cases. Additionally, the ENs specifically exclude the subject merchandise from the Heading 7607. Further, Defendant failed to properly define and differentiate the terms of Subheading 7607.20.10, under which it asserts Plaintiff's materials are classified.

Finally, Defendant did not establish the subject merchandise is not classified under Heading 4911, Plaintiff's preferred classification. It attempted to narrowly define the term "printed matter," ignoring the many instances in the ENs that term is used. Defendant's attempt to

1

distinguish the holding in a case that interpreted "printed matter" was similarly unavailing. Therefore, Plaintiff respectfully asserts that its motion should be granted and that of the Defendant should be denied.

## ARGUMENT

### I.     Defendant Is Not Entitled to Summary Judgment in this Case

Along with its response to Plaintiff's Motion, Defendant has filed a Cross-Motion for Summary Judgment in this case. "In ruling on motions for summary judgment, if there are no genuine issues of material fact, the court must decide whether either party has demonstrated its entitlement to judgment as a matter of law." *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988) *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989). The parties agree that there is no genuine dispute as to any material fact in this case. (Def. MSJ 15, ECF No. 62; Pl. MSJ 9, ECF No. 58.)[1] However, Defendant has not demonstrated its entitlement to judgment as a matter of law.

Defendant (as the movant) bears the burden of proving its case in support of its Cross-Motion for Summary Judgment and, as the non-moving party, Defendant has the burden to show why summary judgment should not be granted to Plaintiff. *See, e.g., Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368-69 (Fed. Cir. 2006) (discussing the burdens of non-moving and moving parties for summary judgment). Defendant has failed on both counts.

In its Motion, Defendant provides little evidence to rebut the undisputed material facts established by Plaintiff. It is well-established that speculation, conclusory allegations, and attorney arguments are insufficient to overcome a motion for summary judgment. *See Ferring B.V. v. Barr Labs.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006). Like the non-movant in *Saab*, Defendant has

---

[1]     Plaintiff incorporates herein the exhibit designations from Plaintiff's Statement of Material Facts Not in Issue (hereinafter "Pl. SMF") and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (hereinafter "Pl. Resp. to Def. SMF").

proffered nothing more than conclusory assertions unsupported and contradicted by admissible facts in an attempt to demonstrate entitlement to summary judgment and oppose Plaintiff's claims. Further, Defendant has misinterpreted relevant precedent, which ultimately supports a judgment for Plaintiff. Beyond the significant issues with the alleged "facts" and legal arguments in support of Defendant's Motion, Defendant's claims are unpersuasive; therefore, Defendant's Motion must be denied. In contrast, for the reasons set forth herein and in Plaintiff's Motion, Plaintiff is entitled to judgment as a matter of law.

## II.   Defendant's Response to Plaintiff's Statement of Facts is Unduly Argumentative

Defendant's response to Plaintiff's Statement of Material Facts is unduly argumentative and attempts to put undue emphasis on the unprinted packaging material that is manufactured at Amcor Singen GmbH ("Amcor Singen") in Germany, rather than the printed flexible packaging material at issue in this case, which is made by Amcor Kreuzlingen in Switzerland. Since the unprinted packaging material is not at issue in this case, all of these "facts" asserted by Defendant are irrelevant and immaterial.

First, Defendant takes issue with Plaintiff's description of the material manufactured at Amcor Singen as "pre-fabricated." (Defendant's Response to Plaintiff's Statement of Material Facts Not in Issue (hereinafter "Def. Resp. to Pl. SMF") ¶¶ 10, 11, 12, 13, ECF No. 62.) Rather than providing any competing material facts, Defendant makes an improper argument that is irrelevant to the issues in this case. Contrary to Defendant's arguments, the definition of "pre-fabricated" does not preclude the fact that the materials transferred from Amcor Singen may be "made to order," as Defendant contends. (Def. Resp. to Pl. SMF ¶¶ 11, 12.) "Pre-fabricated" may be defined as "to fabricate or construct beforehand." Dictionary.com, Pre-fabricate, available at https://www.dictionary.com/browse/prefabricated (last visited May 21, 2021), attached as Plaintiff

Exhibit ("Pl. Ex.") 28). For the reasons discussed herein and in Plaintiff's Motion, the pre-fabricated packaging materials from Amcor Singen are the medium for the communicative information printed by Amcor Kreuzlingen.

Similarly, Defendant places undue emphasis on the fact that most of the materials at issue are "Formpack." (Def. Resp. to Pl. SMF ¶ 28; Defendant's Statement of Undisputed Material Facts (hereinafter "Def. SMF") ¶¶ 1, 3, 5, ECF No. 62.) Plaintiff does not dispute that most of the materials at issue are in Amcor's "Formpack" product line, with the exception of Material No. 3326421.[2] Based on this fact, Defendant then argues this Court's decision in *Amcor Flexibles Singen Gmbh v. United States*, 425 F. Supp. 3d 1287 (2020) (classifying certain ***unprinted*** Formpack materials as backed aluminum foil in Subheading 7607.20.50) is binding. (Def. MSJ 30.) However, this "fact" does not require the subject printed packaging materials be classified in the same manner as the unprinted Formpack materials reviewed in *Amcor Singen*. Further, this Court considered a different tariff classification (Heading 3921) in that case, therefore, the application of *Amcor Singen* to the issues in this case is limited.

Finally, Defendant places undue emphasis on the fact that the materials at issue are pouch and pack materials, rather than lidding material. (Def. Resp. to Pl. SMF ¶ 28.) This focus on the pouch and pack material results in a denial in Defendant's response that is a hypothetical and unsupported by any facts or testimony. *Id.* Specifically, Defendant states "the pouch material, with a larger surface area ***could be*** utilized by plaintiff's customers through means of a sticker or decal providing any labeling needs and therefore the packaging itself need not be printed." (Def. Resp.

---

[2]     Plaintiff recognizes there is a discrepancy between the Interrogatory response and Plaintiff's 30(b)(6) witness' testimony, but asserts this does not create a dispute over a material fact. (Pl. Ex. 5 at 71; Pl. Ex. 3 at AMCOR0001-02.) In fact, the Government acknowledges the veracity of this testimony in its Motion. (Def. MSJ 6 n. 3.)

to SMF ¶ 28 (emphasis added).) This is pure speculation and contrary to the established facts in this case.

Despite the issues described above, Plaintiff does not believe any of these factual disputes creates an issue of material fact that would preclude summary judgment for Plaintiff. Rather, the parties do agree on the key facts that are relevant for determining the correct classification of the goods, specifically:

- Amcor Kreuzlingen, not Amcor Singen, was the importer of record in this case. (Def. Resp. to Pl. SMF ¶ 1.)

- Amcor Kreuzlingen imports the subject material in rolls as a flat material in slit reel or coil form. (Def. Resp. to Pl. SMF ¶ 14.)

- The products purchased by Amcor Kreuzlingen from Amcor Singen are backed aluminum foil. (Def. Resp. to Pl. SMF ¶ 10; Def. SMF ¶ 10.)

- After receipt of the bare packaging materials from Amcor Singen, Amcor Kreuzlingen prints the subject materials with text and product information based on customer specifications. (Def. Resp. to Pl. SMF ¶ 12.)

- The printing on the subject materials has a communicative purpose. (Def. Resp. to Pl. SMF ¶ 19.)

- The printing on the subject materials is "labeling information." (Def. Resp. to Pl. SMF ¶ 21; Def. Resp. to Pl. SMF ¶¶ 22, 24.)

- Amcor Kreuzlingen sells these imported materials to healthcare and pharmaceutical companies who further manufacture them into finished packages after importation. (Def. Resp. to Pl. SMF ¶ 14.)

### III.   Defendant Has Not Established that the Subject Flexible Packaging Materials Are Properly Classified under Heading 7607

#### a.   The Defendant Misapplies Case Law Precedent Classifying Other Flexible Packaging Materials

Defendant attempts to make much of the fact that this Court reviewed the tariff classification of certain "Formpack" packaging materials in *Amcor Singen*. However, this case concerned ***unprinted*** Formpack, which is a critical factual difference between the subject packaging materials and packaging materials at issue in *Amcor Singen.* Defendant also relies heavily on *Alcan Food Packaging (Shelbyville) v. United States*, 771 F.3d 1364, 1368 (Fed. Cir. 2014) to support its interpretation of the exclusionary note applicable to Heading 7607. However, like *Amcor Singen*, the subject packaging materials at issue in *Alcan Food Packaging* were not printed.

Additionally, there is another critical legal difference between the instant case and *Amcor Singen* and *Alcan Food Packaging* cases, namely that the tariff classification dispute at issue in this case does not turn on the fact that the subject flexible packaging materials are a "composite good," which is defined in the HTSUS as "consisting of different materials or made up of different components." General Rule of Interpretation ("GRI") 3(b). While the flexible packaging materials at issue do consist of different materials (aluminum foil and plastic film), the tariff classification issue in this case does not turn on the classification of those materials as both parties agree that, if the material classification controls, then the products should be classified under Heading 7607 as backed foil. (Pl. MSJ 31; Def. MSJ 23.) Instead, the tariff classification issue in this case is whether the packaging materials are "printed matter" classifiable under Heading 4911.

Despite these differences, Defendant claims that this Court's decision in *Amcor Singen* is "significant" and appears to assert that this case is binding on the Court for purposes of the tariff classification of the subject materials. (Def. MSJ 20.) Further, Defendant cites extensively to *Alcan*

6

*Food Packaging*. (Def. MSJ 24-25.) Defendant's assertion concerning the significance of *Amcor*

*Singen*, and implied significance of *Alcan Food Packaging*, fails, however, as the facts and legal

issues in this case are different than those in *Amcor Singen* and *Alcan Food Packaging*.

      **1.**      **The Court's Decision in Amcor Singen Does Not Demonstrate that the Subject Packaging Materials Are Classified under Heading 7607**

In *Amcor Singen*, this Court considered the tariff classification of ***unprinted*** Formpack

materials, which consisted of aluminum foil laminated with plastic films on both sides and was

used to create blister packs. 425 F. Supp. 3d 1287. This is a different set of facts than those at issue

in the present case. In *Amcor Singen*, this Court analyzed whether classification of the unprinted

Formpack material was appropriate under Heading 3921, as plastic film, or under Heading 7607,

as aluminum foil. *Id*. at 1298. This is a different legal issue than the present case. Based on these

distinctions, *Amcor Singen* is not binding precedent for the classification of the subject printed

packaging materials.[3]

Interestingly, Defendant raised a similar issue in the *Amcor Singen* case, which was

rejected by this Court. Specifically, in *Amcor Singen*, Defendant asserted that the decision in *Alcan*

*Food Packaging* (concerning the classification of "Flexalcon" packaging materials), controlled the

classification of the Formpack materials at issue in *Amcor Singen*. *Id*. at 1296. This Court rejected

that assertion and made clear that "[e]very new entry of goods into the United States constitutes a

new cause of action because *every classification involves both the interpretation of the relevant*

*statute as well as questions of fact regarding the merchandise*." *Id*. at 1294 (emphasis added). For

tariff classification cases in particular, "judicial precedent holds weight only with respect to the

---

[3]     We note that Defendant does not assert the same tariff classification determined in *Amcor Singen* (7607.20.50), instead claiming that the subject goods are classified in Subheading 7607.20.10.

legal construction of specific terms or provisions[.]" *Id*. (citing *Mendenhall v. Cedarapids, Inc*., 5 F.3d 1557, 1570 (Fed. Cir. 1993)).

In this case there is no dispute that the subject materials are "backed" aluminum foil, so the Court need not consider whether these materials are properly classified under Heading 3921 or Heading 7607 (the legal issue in *Amcor Singen*). (Def. MSJ 18, 23.) While both *Amcor Singen* and the present case concern (in part) an interpretation of Heading 7607, the facts regarding the subject merchandise are different, and this case concerns the interpretation of different HTSUS headings. Since the Formpack materials at issue in *Amcor Singen* were not printed, the Court did not consider the application of Heading 4911 in that case. The printing on the subject materials establishes a very important factual and legal distinction between the Formpack materials at issue in this case versus those classified in *Amcor Singen*.

Nonetheless, the *Amcor Singen* Court's legal construction of Chapter 76, Note 1(d) is instructive for this case because, just as in *Amcor Singen*, there is another heading under consideration beyond Heading 7607, which requires the application of this Note. Specifically, the *Amcor Singen* Court found that Note 1(d) "indicates that certain articles, which could conceivably fit under [Heading 7607], are properly classified under a different heading if those articles are further processed." *Id*. at 1298. In order to interpret this note, the *Amcor Singen* Court looked to the General Explanatory Notes ("ENs") to Chapter 72 (which apply to Chapter 76) to expand upon the processing that is allowed to be performed on articles of aluminum and still remain within that Heading. *Id*. Specifically, the acceptable processing included "treatments to improve the properties or appearance of the metal, to protect it from corrosion, etc." which do not affect the classification of the aluminum. *Id*. (citing Chapter 76 General ENs).

However, this Court also found that Note 1(d) was a "priority rule" giving priority to another heading that covers the product. *Id*. at 1300 (citing *Alcan Food Packaging*, 929 F. Supp. 2d 1338, 1368 (Ct. Int'l Trade 2013) *aff'd*, 771 F.3d at 1364). Put another way, if the product is advanced "beyond the scope of the aluminum tariff provision" it would be excluded from classification in that heading by Chapter 76, Note 1(d). *Id*. In *Amcor Singen*, the material at issue was reviewed as a composite product consisting of aluminum foil and plastic film, so the Court noted that to be excluded from Heading 7607, the processing of aluminum must "alter the product so significantly that the plastic layers subsume the foil – to the point where the good could no longer be described as foil." *Id*. at 1300-01 (citing *Alcan Food Packaging*, 929 F. Supp. 2d at 1368). In contrast to the material in *Amcor Singen*, there is no dispute that the subject materials are not classifiable as plastic film under Heading 3921.[4]

As Defendant acknowledges in its brief, in *Amcor Singen* the Court considered whether the process of laminating the aluminum foil with plastic films advanced the Formpack materials beyond the scope of the aluminum foil provision (*i.e.*, such that the product now had the character of plastic film) and concluded they did not. *Id*. at 1301. In *Amcor Singen,* each of the headings at issue covered only part of the composite material, so whether or not lamination with plastic film advanced the aluminum foil to become an article of plastic was a proper test. In the instant case, however, the alternate classification for the subject packaging materials is an *eo nomine* provision providing for "printed matter." Therefore, in this case we must determine whether the ***printing process*** transforms the subject packaging materials to "printed matter."

---

[4]     Interestingly, if the parties were to advocate for the classification of the subject materials under Heading 3921, then Section VII, Note 2 would apply when considering the classification of these materials. Section VII, Note 2 states that "plastics . . . printed with motifs, characters or pictorial representations, which are not merely incidental to the primary use of the goods, fall in Chapter 49."

The test for determining whether the subject packaging materials are "printed matter" is whether the printing is "merely incidental to the primary use of the goods." *Aero Rubber Co., Inc. v. United States*, 389 F. Supp. 3d 1296, 1303 (Ct. Int'l Trade 2019). In contrast, Defendant applies a perfunctory essential character analysis to support its asserted tariff classification. (Def. MSJ 26.) This is an incorrect and improper analysis for the tariff classification headings at issue in this case. Contrary to the Defendant's attempt to somehow align its essential character analysis in this case with the tariff classification analysis in *Amcor Singen*, the Court did not perform an essential character analysis for the materials at issue in that case until it considered whether the materials may be classified under Heading 3921, a heading which is not in dispute in this case.[5] *Amcor Singen*, 425 F. Supp. 3d at 1302-1305.

Based on the discussion noted in the preceding paragraph, Defendant incorrectly states that the *Amcor Singen* Court "took printing into account when determining the essential character of the Formpack then at issue." (Def. MSJ 30.) First, Defendant mischaracterizes the *Amcor Singen* Court's analysis, in which it referred to hypothetical printing during its analysis of the product's classification under Heading 3921.[6] Further, the facts and legal analysis for the subject materials are distinct from this portion of the *Amcor Singen* decision because ***the subject materials are printed at the time of importation***. This factual distinction requires a completely different legal analysis of the products' tariff classification, specifically because different Headings, Section or

---

[5]     We note that after considering the application of Chapter 76, Note 1(d), Defendant jumps immediately into the essential character analysis performed by the *Amcor Singen* Court under its Heading 3921 analysis, a Heading which is not at issue here. (Def. MSJ 28-29.)

[6]     It was only during the discussion of essential character and the functions of the aluminum foil and plastic layers that the *Amcor Singen* court mentioned the plastic film layer's critical, "albeit secondary," attribute of "inform[ing] the customer of what the blister pack contains: drug information may be printed on Formpack's outer layer of oPA film." *Id.* at 1305.

Chapter Notes, and Explanatory Notes are at issue in this case. Contrary to the Defendant's argument, an essential character analysis (which was required under Heading 3921 in *Amcor Singen*) is not involved in this case because the parties agree that Heading 3921 is not at issue.

2.     **The Defendant Misconstrues the Court's Decision in** *Alcan Food Packaging*

Defendant also relies heavily upon the *Alcan Food Packaging* case to support its broad interpretation of the scope of Heading 7607 and its narrow interpretation of Chapter 76, Note 1(d). However, just as Defendant incorrectly interprets the impact of the holding in *Amcor Singen* on this case, it also relies upon a misinterpretation of the Court of Appeals for the Federal Circuit's ("CAFC") clarification of Chapter 76, Note 1(d) in *Alcan Food Packaging* in making its argument.

Like *Amcor Singen*, in *Alcan Food Packaging*, this Court considered whether certain flexible packaging materials consisting of aluminum foil laminated on both sides with plastic film was properly classified under Heading 3921 or Heading 7607. 929 F. Supp. 2d 1338 (Ct. Int'l Trade 2013) *aff'd* 771 F.3d 1364 (Fed. Cir. 2014). The *Alcan Food Packaging* Court also performed an essential character analysis, but this was based on the Court's determination that such analysis "may be necessary to classify plastic-aluminum foil *composites* like Flexalcon." *Id*. at 1349 (emphasis added). Like *Amcor Singen*, the *Alcan Food Packaging* Court only considered essential character based on application of the Chapter 39 ENs. *Id*. at 1346-47.[7] Ultimately, this Court found that the aluminum foil layer in Flexalcon did not "characterize the whole such that the whole could be properly described as aluminum foil." *Id*.at 1351.

Unlike in *Alcan Food Packaging* and *Amcor Singen*, the legal issue in this case does not concern which of the underlying composite materials of the subject flexible packaging materials,

---

[7]     The CAFC affirmed this Court's decision in *Alcan Food Packaging*, finding an essential character analysis performed based on the Chapter 39 ENs to be appropriate. *See* 771 F.3d at 1367.

aluminum foil or plastic film, provide the product's essential character. Instead, the dispute is whether the packaging material has assumed the character of "printed matter" by virtue of the printing. This does not require an essential character analysis. However, even assuming an essential character analysis did apply in the instant case, just as with the Flexalcon, the subject materials as a whole are not properly described as aluminum foil, but they are, as a whole, described as "printed matter."

As Defendant points out, the CAFC also reviewed Chapter 76, Note 1(d) and stated that it provides a two-part clarification to the scope of Heading 7607. However, based on the plain language of the Chapter 76, Note 1(d), it appears the Court may not have properly delineated the two-part test. (Def. MSJ 20.) Chapter 76, Note 1(d) states, in relevant part, as follows:

> Headings 7606 and 7607 apply, *inter alia*, to plates, sheets, strip and foil with patterns (for example, grooves, ribs, checkers, tears, buttons, lozenges) and to such products which have been perforated, corrugated, polished or coated, provided that they do not thereby assume the character of articles or products of other headings.

At the heading level, Heading 7606 applies to aluminum plates, sheets, and strip (exceeding 0.2 mm in thickness) and Heading 7607 applies to aluminum foil (not exceeding 0.2 mm in thickness). Per Chapter 76, Note 1(d), these Headings will apply to such goods, even if they have been further processed, so long as they do not assume the character of goods classified in another heading, giving the following specific, but not exhaustive, examples of further processing: 1) plates, sheets, strip and foil with patterns (for example, grooves, ribs, checkers, tears, buttons, lozenges); and 2) such products which have been perforated, corrugated, polished or coated.

This conclusion is supported by a plain reading of the two-part test discussed in the CAFC's opinion in *Alcan Food Packaging*. First, the CAFC noted that Chapter 76, Note 1(d) applied to products that were plates, sheets, strip and foil whether or not they had patterns or had been perforated, corrugated, polished or coated. *See Alcan Food Packaging*, 771 F.3d at 1367. Second,

12

Chapter 76, Note 1(d) applies to these aluminum products that have been further processed, provided they have not assumed "the character of articles or products of other headings." *Id*. The CAFC was clear that the "assume the character" language limits the preceding portion of the Chapter 76, Note 1(d) (*e.g.*, the examples following the phrase "inter alia") and is "critical" to the application of this Chapter Note to goods that may be classifiable under Headings 7606 and 7607. *Id*. at 1368. Ultimately, Chapter 76, Note 1(d) "is a priority rule," giving priority to another heading that covers the aluminum plate, sheet, strip, or foil that has been further processed into another article.

Contrary to Defendant's assertion, at no point does the CAFC state its two-part clarification of Chapter 76, Note 1(d) requires that a product assume the character of another heading only by undergoing treatments specifically referenced in the Note (or the Chapter 72 General ENs). (Def. MSJ 24-25.) This interpretation ignores the presence of the term "inter alia," which demonstrates that the exemplars that the follow the comma are "not intended to be exhaustive." *Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361, 1367 (Ct. Int'l Trade 1999) (stating "the term 'inter alia' . . . means, 'among other things' and "demonstrates that the exemplars [following it] were not intended to be exhaustive") (internal citations omitted). Further, this interpretation ignores the fact that the processing that excluded the Flexalcon at issue in *Alcan Food Packaging* from Heading 7607 (lamination with plastic film) was not included in the specific examples of Note 1(d). *Alcan Food Packaging*, 771 F.3d at 1367. Properly reading and applying the CAFC's "two-part" clarification of Chapter 76, Note 1(d) in *Alcan Food Packaging*, confirms that aluminum plates, sheets, strip and foil remain in Headings 7606 and 7607 only if they are not further processed in a way that makes them articles or products of other headings. *Id.*

13

Defendant also erroneously states that "printing" is not included in the enumerated list of processes in the Chapter 72 General ENs. (Def. MSJ 25.) However, the Chapter 72 General ENs specifically state that finished metal products may be "subject to further finishing treatments **_or converted into other articles_** by a series of operations, such as … surface treatments or other operations . . . to improve the properties or appearance of the metal." (emphasis added). Among these treatments is "coating with non-metallic substances, *e.g.*, enameling, vanishing, lacquering, painting, ***surface printing*** . . ." Chapter 72 General ENs (C)(2)(d)(v) (emphasis added). Therefore, the Chapter 72 General ENs specifically recognize that aluminum foil may be converted into another article by printing. In this case, the printing process for the subject materials does cause them to assume the character of products of another heading, specifically "printed matter," provided for in Heading 4911.

Contrary to Defendant's assertion, the test required by Chapter 76, Note 1(d) in this case is simply whether the subject packaging materials have assumed the character of articles or products of other headings by virtue of the printing. As mentioned above, the subject flexible packaging materials are not being analyzed as composite products, because there is no dispute that they are backed aluminum foil. However, they are "printed matter," and, pursuant to Chapter 76, Note 1(d), classification under Heading 4911, another heading that covers the subject products, should be given priority. Since the subject packaging materials have assumed the character of "printed matter," they are excluded from classification in Heading 7607.

> **b.   The Subject Packaging Materials Are Labels Excluded from Heading 7607 by the ENs**

Beyond the misapplication of the case law cited above, Defendant also disputes that the subject packaging materials are "labels" specifically excluded from Heading 7607 by the

Explanatory Notes. Defendant is wrong and its attempts to diminish the impact of the ENs in this case are unavailing.[8]

"Although the Explanatory Notes are not legally binding, [they] may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision.'" *Aero Rubber* at 1303 (citing *Roche Vitamins, Inc. v. United States*, 772 F.3d 728, 731 (Fed. Cir. 2014)). In fact, "the Explanatory Notes are[] persuasive authority for the Court when they specifically include or exclude an item from a tariff heading." *H.I.M./Fathom, Inc. v. United States*, 981 F. Supp. 610, 613 (Ct. Int'l Trade 1997). Like the Chapter 49 General ENs provide specific exclusions from the "printed matter" covered by that Chapter, the 7607 ENs provide a specific exclusion of certain printed foil from Heading 7607. Therefore, since the subject packaging materials are labels by virtue of their printing, the 7607 ENs are particularly relevant in this case since they specifically exclude the subject packaging materials from this tariff provision.

The 7607 ENs state that "[t]he provisions of the Explanatory Note to heading 74.10 relating to copper foil apply, mutatis mutandis, to this heading." The 7410 ENs state that "[f]oil remains in the heading whether or not it has been embossed, cut to shape (rectangular or otherwise), perforated, coated (gilded, silvered, varnished, etc.), or printed." However, the 7607 ENs are equally clear that this heading does not cover "[p]rinted aluminum foil labels being identifiable individual articles by virtue of the printing (heading 49.11)."[9]

---

[8]   Since the term "printed" is included in the language of both Heading 4911 and Heading 7607, we must determine the scope of printed goods covered by each heading. (*See* Pl MSJ 19.) The ENs assist with the analysis and interpretation of the tariff terms in these headings.

[9]   An identical exclusion for labels is included in the terms of the 7410 ENs.

Defendant does not dispute that the subject packaging materials are labels or contain label information. (Def. MSJ 44, 35 ("the [] labels contain written information…"); Def. Resp. to Pl. SMF ¶¶ 21-22 ("the printing on the . . . material contains information that might be included as a label" or as "labelling information"), 24 (Material Nos. 3327379, 3327378, 3336337, 3335726, 3344282, and 3345293 are "printed with label information").) Instead, it appears Defendant's argument against application of the EN exclusionary language in this case is that the packaging materials are not the type of labels excluded from Heading 7607 since the ENs "are referring to standalone aluminum foil labels." (Def. MSJ 44.) However, Defendant cites no support for its interpretation that the label exclusion is based on the form of the label rather than its printing.[10]

While there are various definitions of the word "label," Defendant attempts to take a restrictive reading of this term based on a definition of labels made of slips of paper or cloth. (Def. MSJ 44.) First, Defendant's chosen definition is not applicable in the context of Heading 7607 since this tariff provision covers aluminum foil. Further, and more important, the word "standalone" does not exist in Defendant's cited definition or in the ENs.[11]

Per the ENs it is the printing that is critical for determining whether a product is a "label" excluded from Heading 7607, not whether it is "standalone." The ENs exclude labels that are "identifiable individual articles ***by virtue of the printing.***" 7607 ENs (emphasis added). There is no reference in this exclusionary language (specific or implied) that indicates a label must be

---

[10]   Defendant's interpretation of "standalone" labels contradicts guidance of the 4821 ENs. *See* discussion *infra* at 18-19.

[11]   We assert that the broader definition of "label" provided in Plaintiff's Motion best captures the meaning of the exclusion found in the Heading 7607 ENs and best expresses the congressional intent of Heading 4911 and 7607. *See Quaker Pet Group, LLC v. United States*, 287 F. Supp. 3d 1348, 1355 (Ct. Int'l Trade 2018); *see also, Richards Med. Co. v. United States*, 910 F.2d 828, 830 (Fed. Cir. 1990).

"standalone" – *e.g.*, the ENs do not state that labels are identifiable by virtue of being perforated or cut. Instead, this EN exclusion directs a review of the printing alone to identify whether a product is a "label."

Based on the plain language of the 7607 ENs, if the printing identifies the individual labels on the foil material, the product is excluded from Heading 7607 and is directed to classification in Heading 4911 as "printed matter." In this case, there is no dispute that the printing on the subject packaging materials is individual labels. (Pl. Ex. 5 at 42, 72, 78; Pl. Ex. 13 at 64; Pl. Ex. 14 at 4-5; Pl. Ex. 7 at 24-25, 80-81, 82; Def. MSJ 35, 44; Def. Resp. to Pl. SMF ¶¶ 21-22, 24.) The fact that there are multiple labels printed on the materials (*i.e.* a sheet of labels) does not impact the conclusion that these labels are individually identifiable by their printing. (Def. MSJ 44, 35; Def. Resp. to Pl. SMF ¶¶ 21-22.)

Defendant also cites two rulings issued by U.S. Customs and Border Protection ("CBP") to support its conclusion that the packaging materials cannot be considered "individual identifiable labels." (Def. MSJ 44.) First, we note that the language of the ENs does not contain the phrase "individual identifiable labels." Instead, the ENs refer to labels that are "identifiable individual articles" based on their printing – a critical distinction. Next, neither of the CBP rulings cited by the Defendant address the packaging product at issue in this case or anything similar.

First, Defendant cited to New York Ruling Letter I82484 (May 24, 2002) which classified an aluminum foil label with an adhesive backing that was printed with a warning and technical information and was designed to be placed in the engine compartment of trucks. CBP classified this label in Subheading 8310.00.0000, which provides for "[s]ign-plates, name-plates, address-plates and similar plates, numbers, letters and other symbols, of base metal, excluding those of heading 94.05." This ruling does not define the term "label" or address Headings 4911 or 7607.

17

Therefore, this ruling does not appear to be relevant in this case for assisting the Court's understanding of the classification of the subject materials or the classification treatment of aluminum foil labels generally.

Defendant also cited to Headquarters Ruling Letter ("HQ") 956733 (Feb. 10, 1995), which reviewed the tariff classification of "[l]abels designed primarily for the wine and spirits industry to be attached to bottles … imported in a finished, cut to shape, ready to use state." In this ruling, CBP considered Headings 4821, 4911, and 7607 as possible classifications for the wine and spirit labels. CBP classified the labels in Subheading 4821.10.20, which provides for "[p]aper and paperboard labels of all kinds, whether or not printed…" (one label was made of foil and paper, but primarily of paper, so it was excluded from Headings 4911 and 7607).

In HQ 956733, CBP cited to the 4821 ENs as support for its classification determination, which read as follows:

> This heading covers all varieties of paper and paperboard labels of a kind used for attachment to any type of article for the purpose of indicating its nature, identity, ownership, destination, price, etc. They may be of the stick-on type (gummed or self-adhesive) or designed to be affixed by other means, *e.g.*, string.

> These labels may be plain, printed to any extent with characters or pictures, gummed, fitted with ties, clasps, hooks or other fasteners or reinforced with metal or other materials. They may be perforated or put up in sheets or booklets.

While the 4821 ENs do not contain a specific definition of the term "label," they do provide guidance on the characteristics of labels classified under the HTSUS. *See Maxcell Biosciences Inc. v. United States*, 533 F. Supp. 2d 1261, 1267 n.17 (Ct. Int'l Trade 2007) (stating that the Heading terms and Explanatory Notes at issue "are properly construed *in pari materia* with other headings of the HTSUS . . . and Explanatory Notes"); *see also Amcor Singen*, 425 F. Supp. 3d at 1302 (construing Heading 3921 *in pari materia* with Heading 3920 "elucidate the meaning of the term

'other'"). There is no restriction in this EN that a label must be "standalone." Instead, the language of the 4821 ENs is clear that a label "may be perforated or ***put up in sheets***." (emphasis added).[12]

In fact, we have identified a CBP ruling where Defendant recognized that labels may be imported in roll materials. *See* HQ 963711 (June 12, 2001), available at https://rulings.cbp.gov/search?term=963711&collection=ALL&sortBy=RELEVANCE&pageSize=30&page=1 (last visited June 7, 2021), attached as Pl. Ex. 29. In this ruling, CBP reviewed the tariff classification of "food grade pressure sensitive adhesive label material … imported in rolls 2000 meters in length" and considered classification in Headings 3919 and 4821. While CBP ultimately classified the label material in heading 3919 (as "self-adhesive plates, sheets, film, foil, tape, strip and other flat shapes, of plastics"), it did not exclude the label material from classification as labels in Heading 4821 because it was a roll material.[13]

Finally, Defendant claims that to interpret the 7607 ENs language excluding labels other than their interpretation "would make the tariff wording 'whether or not printed' [in Heading 7607] superfluous." (Def. MSJ 44.) This is wrong. The language of the ENs is clear that printed labels are excluded from Heading 7607, which aligns with the exclusion of "printed matter" from this heading (based on Chapter 76, Note 1(d)). The excluded labels are merely one example of "printed matter" that is excluded from Heading 7607. Even though labels and other "printed matter" are excluded from Heading 7607 (and classified in Heading 4911), aluminum foil with decorative printing remains in Heading 7607 (*i.e.*, where the printing is merely incidental to the primary use

---

[12]    We note that this EN also specifically references labels that would be classified in Heading 4911 (similar to the 7607 ENs).

[13]    It is unclear whether the label material in HQ 963711 was printed and, therefore, whether CBP's classification determination would remain valid under the holding of the *Aero Rubber* case.

of the good). *See* discussion *infra* at 33-42; (Pl. MSJ 30-31.) Under Plaintiff's interpretation, the language "whether or not printed" in Heading 7607 is operative to include certain printed foil in this heading, but not all printed foil. Chapter 76, Note 1(d) excludes printed foil that is a product or article of another heading. Therefore, foil that is printed with communicative text in the form of labels, like the subject packaging materials, are excluded from Heading 7607 and properly classified as "printed matter" in Heading 4911.

### c.   Defendant Fails to Properly Define and Differentiate the Terms of Subheading 7607.20.10

Based on its assertion that the subject flexible packaging materials are classified as aluminum foil under Heading 7607, Defendant then attempts to establish classification in Subheading 7607.20.10 by broadly defining the terms of that subheading. (Def. MSJ 30.)[14] However, Defendant's expansive interpretation of the terms of Subheading 7607.20.10 would result in all printed backed foil being classified in this subheading and none in Subheading 7607.20.50, the tariff provision for other backed foil (or any other tariff provision). This is not a correct interpretation.

First, this interpretation is in direct contradiction to the plain language of the HTSUS as Subheading 7607.20.10 does not include the word "printed." Next, this is contrary to the testimony of Defendant's own Rule 30(b)(6) witness, who testified that there must be some foil classified under Subheading 7607.20.50. *See (*Pl. Ex. 8 at 27 (Q: "It seems like you're saying is it's possible that a back foil that's printed could go under 7607.20.50, but it would be based on a review of the

---

[14]   Additionally, Defendant's definitions are from new exhibits, rather than from their Interrogatory responses or from any of the other discovery in this case. (Def. MSJ 31-33.) Some of the discovery in this case established more refined definitions of the terms of Subheading 7607.20.10. (Pl. MSJ 33-38.) Defendant does not dispute the definitions contained in the discovery materials.

product?" A: "Yes.").) Since Defendant has failed to define and differentiate between the terms "printed" and "covered or decorated with a character, design, fancy effect or pattern," their arguments must be rejected. *See, e.g.*, *Mead Corp. v. United States*, 283 F.3d 1342, 1348 (Fed. Cir. 2002) (finding that the court must "define and differentiate" the phrase "diaries" from a list of similar exemplars "with a finer point" than earlier cases that had more "blunt" language in the previous tariff heading with which to work).

At the heading level, Heading 7607 covers:

*Aluminum foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm:*

This tariff provision establishes that aluminum foil (not exceeding 0.2 mm in thickness) will remain classifiable in this tariff provision whether or not it is printed and whether or not it is backed. Heading 7607 has subheading breakouts for foil that is "backed" and foil that is "not backed." There is no comparable subheading under Heading 7607 for "printed" foil. Therefore, the first consideration for determining the proper subheading classification of aluminum foil classifiable under Heading 7607 is whether or not it is "backed."

There is no dispute that the subject flexible packaging materials are made with aluminum foil that is "backed" and, if classifiable in Heading 7607, would be classified in Subheading 7607.20, which provides for "backed" aluminum foil. (Pl. MSJ 31; Def. MSJ 23.) Subheading 7607.20 is further subdivided into the following two subheadings:

7607.20.10 – Covered or decorated with a character, design, fancy effect or pattern

7607.20.50 – Other

There is no specific subheading breakout under Subheading 7607.20 for printed foil.

While the distinction between aluminum foil that is "backed" or "not backed" is distinguished at the subheading level within Heading 7607, the distinction between aluminum foil that is printed or not printed is not. Therefore, based on the application of the heading language to the subheadings under Heading 7607, each of these subheadings covers aluminum foil that is printed or unprinted. In other words, the backed aluminum foil that is classifiable under Subheading 7607.20 includes backed aluminum foil "whether or not printed."

Taking the final step in interpreting the subheading language for the classification of "backed" foil, we must apply the "whether or not printed" language to the two subheadings under Subheading 7067.20. This means that Subheading 7607.20.10 may cover backed aluminum foil that is "covered or decorated with a character, design, fancy effect or pattern" from printing or by some other means (*i.e.*, whether or not the foil is printed). In contrast, and for the purposes of analyzing the printed packaging material in this case, Subheading 7607.20.50 would cover all printed foil that is not "covered or decorated with a character, design, fancy effect or pattern" (*i.e.*, "other" backed foil, whether or not it is printed).[15]

Rather than offering a cogent interpretation of Subheading 7607.20 to support its proposed classification, Defendant offers self-serving definitions of the terms in Subheading 7607.20.10 and no explanation of how this Court may distinguish between printed foil of Subheading 7607.20.10 and printed foil of Subheading 7607.20.50. First, Defendant fails to properly define the term "character" so as to give effect to its proper meaning. (Def. MSJ 34 n.10.) Defendant asserts that the singular term "character" in Subheading 7607.20.10 is interchangeable with the plural "characters" and cites to 1 U.S.C. § 1 to support this proposition. *Id*. However, 1 U.S.C. § 1

---

[15]     In Plaintiff's Motion, we offered distinct definitions for all the terms of Subheading 7607.20.10. *See (*Pl. MSJ 33-37.)

specifically states that "words importing the singular include and apply to several persons, parties, or things." Therefore, a proper application of 1 U.S.C. § 1 indicates that a "character" in this context may be a number of different things (*e.g.*, a letter, a number, a symbol) and is not a blanket statement that this singular word becomes plural.

For context in the HTSUS, it is important to contrast the use of the singular word "character" in Subheading 7607.20.10 with the use of the plural word "characters" in other portions of the HTSUS addressing printed articles. For example, Chapter 48, Note 12 states that "paper, paperboard, cellulose wadding and articles thereof, printed with motifs, characters or pictorial representations, which are not merely incidental to the primary use of the goods, fall in chapter 49" and Section VII, Note 2 states that "plastics, rubber and articles thereof, printed with motifs, characters or pictorial representations, which are not merely incidental to the primary use of the goods, fall in chapter 49." To give proper meaning to the HTSUS, the distinction between character (singular) and characters (plural) with respect to printed articles cannot be interpreted as unintentional. *See Meyer Corp. v. United States*, 255 F. Supp. 3d 1348, 1357 (Ct. Int'l Trade 2017) ("Congressional use of the plural and the singular ('article') cannot be read as unintentional."). Therefore, we respectfully assert that the term "character" in Subheading 7607.20.10 should be read as it is in the plain language of the statute, as a singular "character."

Second, Defendant ignores the testimony of Plaintiff's expert in supplementing the common and commercial meanings of the terms of Subheading 7607.20.10 with definitions actually used in the packaging industry. *See Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356 (Fed. Cir. 2001) ("The common meaning of a term is presumed to be the same as its commercial meaning.") Defendant broadly defines "cover" as, among other things, "to spread over" or "to appear here and there on the surface of." (Def. MSJ 31-32.) However, the remaining

definitions cited by Defendant in its Interrogatories contemplate that "cover" means a surface covered in its entirety. (Pl. MSJ 33-34.) Additionally, Plaintiff's expert testified that "cover" is defined in the printing industry as "totally covered by ink with no nonimage space." (Pl. Ex. 11 at 20; Pl. Ex. 10 at 68).

Third, Defendant's definition of pattern and design render one or the other superfluous in the text of Subheading 7607.20.10. Defendant's definition of "pattern" is just a "repeated decorative design." (Def. MSJ 33.) If a pattern were merely a decorative design, that would render the use of the term "pattern" superfluous since the plain language of Subheading 7607.20.10 specifically includes backed foil decorated with a design. This definition also ignores the guidance in Chapter 76, Note 1(d), which provides exemplars of patterns, as "for example, grooves, ribs, checkers, tears, buttons, or lozenges." Similarly, Defendant defines "design" as a "pattern," "decorative pattern," or "repeating picture." *Id*. Accepting this definition would also render the use of the term "pattern" or "design" superfluous. *Id*. at 32. In contrast, Plaintiff provides a distinct definition of "design" that is based on the printing industry and would not render the use of these two terms superfluous. (Pl. MSJ 36 (stating that in the printing industry, "design means 'enhancement of the visual effects of a printed material'").)

Defendant uses these broad definitions of "pattern" and "design" to assert that the printing on the subject materials constitutes a "repeating picture" or "decorative design." However, Plaintiff's expert testified that the printing on the subject packaging materials consists of "individual labels that are replicated across the foil during the printing process (called imposition)" which is the "manifestation of the desire to efficiently print multiple labels while passing through a printing press." (Fleming Exp. Rep. 34; Pl. Ex. 10 at 88.). In this printing process, "an array of labels is laid out on the image carrier (or master), in this case a gravure cylinder, and therefore

appear in this manner on any print sample." (Fleming Exp. Rep. 34; Pl. Ex. 10 at 99-102, 107, 111, 128.) In other words, the printing is not a pattern, but "imposition," which is necessary for efficient printing of the subject materials. This expert testimony was corroborated by third-party witness, Andrew Gee, Director of Regulatory Affairs of Amcor's customer that purchases Material No. 3326421, who stated that the purpose of the repetitions of the preprinted information is because "it comes in as a long roll, so that will be cut during the packaging process into multiple individual packages, and the information on the roll itself will be transmitted." (Pl. Ex. 13 at 7, 24.) "It's designed to fit on the individual package blisters." (Pl. Ex. 13 at 24.) Further, this printing is not decorative, as it contains names of products and instructions for use. (Pl. MSJ 21-23.)

Finally, while Defendant defines the terms of Subheading 7607.20.10 (although we assert they do so incorrectly), it does not differentiate between these terms so as to state whether the subject materials are covered **or** decorated. Further, at no point does Defendant determine whether the covering or decorating on the subject packaging materials is a "fancy effect," **or** a "pattern," **or** a "character" **or** a "design." Rather, Defendant conclusively states that the subject materials are "covered or decorated with a character, design, fancy effect, or pattern." (Def. MSJ 34.) This determination highlights the error in Defendant's analysis, as its assertion that the subject materials are all of the things covered by Subheading 7607.20.10 indicates that it has not carefully defined the scope of the goods classified in this subheading. *See Mead*, 283 F.3d at 1347-48 (finding it necessary to determine whether the subject products were diaries <u>or</u> "other articles similar to diaries.").

We can contrast Defendant's failure to define and differentiate the terms of Subheading 7607.20.10 with the CAFC's analysis in *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 (Fed. Cir. 2013). In *Deckers*, the CAFC affirmed this Court's analysis of the terms of an *eo*

*nomine* provision for slip-on footwear. The CAFC found it important to clarify that if Congress had intended a subheading at issue to "apply only to shoes, rather than to various types of footwear, it could readily have inserted the word 'shoe' into the statute." *Id*. (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) (When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citations and internal quotation marks omitted))). The CAFC found the importer's argument that "footwear" did not include "boots" improperly excised the phrase "footwear" from the statutory text, and that the Court was "obliged to give effect, if possible, to every word Congress used." *Id*. at 1367-68 (citing *Reiter v. Sonotone Corp*., 442 U.S. 330, 339 (1979)).

Additionally, in *Deckers* the CAFC found the importer's argument to limit the phrase "slip-on footwear" to only encompassing footwear that could be slipped on without the use of hands would make the other *eo nomine* items in the heading superfluous – namely footwear with open heels. *Id*. at 1371. The CAFC rejected this interpretation, applying the rule against surplusage and stating that it must "strive to give effect to every word in the statutory text." *Id*. In this case, Defendant's interpretation of Subheading 7607.20.10 would render some or all of the language in this tariff provision superfluous, violating the rule against surplusage.

Defendant's cursory attempt to make the terms "design" and "pattern" interchangeable can also be contrasted with the extensive analysis in *Allstar Marketing Group, LLC v. United States*, wherein this Court carefully considered whether two words used in the HTSUS (garment and apparel) could be considered interchangeable. 211 F. Supp. 3d 1319, 1329-30 (Ct. Int'l Trade 2017) (reviewing the proper classification of a Snuggie). Rather than make a cursory statement that the two distinct words were interchangeable, the Court undertook an exhaustive review of the

Heading and Chapter language, as well as the Section Notes and the structure of the Section itself, along with common dictionary meanings and other court cases to find the terms were interchangeable. *Id*. at 1330. Defendant performs no such analysis for the terms of Subheading 7607.20.10 in this case.

Defendant's lack of a specific determination as to which elements of the terms of Subheading 7607.20.10 the subject materials meet can also be contrasted with the remainder of the Court's analysis in *Allstar*. After its exhaustive analysis of interchangeable terms, the Court next considered whether the Snuggie fell within any of the listed exemplars in the ENs to the garment heading at issue. *Id*. at 1332. All of the exemplars were similar, but distinct, and the Court considered whether the Snuggie fit specifically into only *two* of the exemplars, only to conclude that it fit into neither. *Id*.

As in *Deckers* and *Allstar*, it is important to carefully define each of the terms at issue in Subheading 7607.20.10, as Plaintiff did in its Motion for Summary Judgment. (Pl. MSJ 33-38.) First, it is important to define each of the terms of Subheading 7607.20.10 so as not to render any of them surplusage. In this case, there is no indication that the terms "pattern" and "design" (or any of the other terms in Subheading 7607.20.10) are meant to be interchangeable. Finally, Defendant does not offer a solution as to which exact term under Subheading 7607.20.10 the subject packaging materials meet. Rather, Defendant's broad interpretation of the terms of Subheading 7607.20.10 appears to mean that any printed backed aluminum foil should be classified under that subheading, regardless of the decorative or informational nature of the printing. This interpretation fails to give effect to the terms of Heading 4911, Chapter 76, Note 1(d), the 7607 ENs, and this Court's own interpretation of the tariff term "printed matter."

In contrast, Plaintiff's interpretation of Subheading 7607.20.10 gives effect to every term in that subheading and ensures the language of the headings, subheadings, Chapter Notes, and ENs are all given effect. (Pl. MSJ 32-38.) Therefore, we encourage the Court to adopt the interpretation that printed aluminum foil that has assumed the character of "printed matter" is classified in Heading 4911, while printed aluminum foil with printing that is "merely incidental" would be classified under Heading 7607. Backed aluminum foil that is printed, but is not "printed matter" of Heading 4911, is classified in Subheading 7607.20 based on the determination of whether or not it is "covered or decorated with a character, design, fancy effect or pattern." In this case, Defendant acknowledges, the subject packaging materials are printed with communicative text information or "label information." (*See* Def. MSJ 35, 44; Def. Resp. to Pl. SMF ¶¶ 21-22, 24.) Therefore, the subject materials are properly classified under Heading 4911 as "printed matter" and are excluded from Heading 7607.

IV.   **Defendant Has Not Established that the Subject Flexible Packaging Materials Are Not Classified under Heading 4911**

a.   **Defendant Improperly Limits the Definition of "Printed Matter" of Heading 4911**

Although this Court has defined the tariff term "printed matter" for Heading 4911 in *Aero Rubber,* Defendant claims that the subject flexible packaging materials do not qualify as "printed matter" classifiable in this heading, not because they do not meet the definition established by this Court, but because they do not meet another definition altogether. (Def. MSJ 38-42.) While Defendant acknowledges that the term "printed matter" may be defined broadly (recognizing the broad definition of "printed matter" cited by Plaintiff), Defendant attempts to limit "printed matter" to certain printed materials that are "eligible for a special mailing rate" based on a more

28

narrow dictionary definition and language found in the USPS International Mail Manual.[16] (*Id.* at 39-41.) Defendant's attempts to narrowly redefine "printed matter" for Chapter 49 and Heading 4911 in contradiction to the Court's decision in *Aero Rubber* does not best express the congressional intent of this tariff term and must be rejected.[17]

First, Defendant's reliance on a definition of "printed matter" from another agency's regulations is misplaced. (Def. MSJ 40-41 (citing the Mailing Standards of the United States Postal Service, International Mail Manual (IMM), which is incorporated into 19 C.F.R. 20.1 by reference).) This Court has long held that definitions or classifications of other government agencies "are not intended to control for customs classification." *Marubeni Am. Corp. v. United States*, 821 F. Supp. 1521, 1529 (CIT 1993). Therefore, it is not appropriate to look at the definition of "printed matter" from the postal code to define the tariff term "printed matter" in this case.

Additionally, Defendant's limited interpretation of "printed matter" defies common sense as the headings of Chapter 49 cover a variety of printed articles, none of which are limited or identified by their eligibility for a special mailing rate.[18] For example, the headings of Chapter 49 include a wide variety of printed matter, including printed books, newspapers, coloring books,

---

[16]     Defendant did not raise this limited definition of the term "printed matter" in *Aero Rubber*, and this limited definition was not considered by the Court.

[17]     "Where a tariff term has various definitions or meanings and has broad and narrow interpretations, the court must determine which definition best expresses the congressional intent." *Amcor Singen*, 425 F. Supp. 3d at 1299 (rejecting the Government's narrow definition of the term "backed" for Subheading 7607.20 because such a narrow definition would "render the entire concept" of the subheading language "a nullity").

[18]     None of the headings of Chapter 49, including Heading 4911, have any reference to the mail classification for printed matter classified in the heading – it is simply not mentioned. There is no such limitation or requirement for classification in any heading of Chapter 49.

sheet music, maps, architectural drawings, stamps, decalcomanias, postcards, and calendars.[19] (*See*

Def. MSJ 42 (acknowledging that various articles of headings 4901, 4902, 4903, 4905, 4906, and

4910 are "printed matter").) Further, Heading 4911, which covers "all printed matter … not more

particularly covered by any of the preceding headings of the Chapter," includes a wide variety of

printed articles, including catalogs, travel literature, pictures, photographs, and customs forms.

4911 ENs. The ENs for other headings expound on the broad scope of "printed matter" in Heading

4911 by directing the following articles to this heading:

- Blank multi-coupon travel tickets (4820 ENs);
- Printed stickers (4821 ENs);
- Lottery tickets, "scratch cards", raffle tickets and tombola tickets (4823 ENs);
- Aerial survey or landscape photographs (4905 ENs);
- Window transparencies (4908 ENs);
- Printed labels are included (7410 ENs/ 7607 ENs); and
- Stamps sometimes issued by retailers to their customers as a rebate on purchases (9704 ENs).

Despite the broad scope of the term "printed matter" established by the language of the

HTSUS and the ENs, as well as the Court's determination in *Aero Rubber*, Defendant claims that

the subject flexible packaging materials do not meet "the plain language of the tariff terms of

Heading 4911" because they are not documents, letters, or advertisements eligible for a special

mailing rate. (Def. MSJ 40.) However, there is no such limitation indicated in the language of the

---

[19]   Stating that "Heading 4911, HTSUS, does not exist in a vacuum," Defendant asserts that this heading "should be read together with the other Headings and Subheadings to determine the scope of Chapter 49, HTSUS." (Def. MSJ 41.) We agree and, for the reasons discussed herein, conducting such an analysis completely contradicts Defendant's argument. For example, sheet music is printed matter classified in Heading 4904, but there is nothing in that Heading or the associated ENs that limits sheet music to materials eligible for a special mailing rate. Newspapers are printed matter classified in Heading 4902, but there is nothing in that Heading or the associated ENs that limits newspapers to materials eligible for a special mailing rate.

HTSUS or the ENs and the headings of Chapter 49 that cover various "printed matter," making it clear that this tariff term was not meant to be limited in the manner argued by the Defendant.

Defendant also attempts to limit the scope of "printed matter" by taking a narrow view of the Chapter 49 General ENs. However, the Court has not interpreted the ENs in the narrow manner claimed by Defendant. *See Aero Rubber*, 389 F. Supp. 3d at 1305. Per the Chapter 49 General ENs, this Chapter "covers all printed matter of which essential nature and use is determined by the fact of its being printed…" *Id*. The test for identifying whether the essential nature and use is ***determined by*** the printing is whether the printing is merely incidental to the primary use of the good. *Id*. Where the printing is communicative, that determines the essential nature and use of the product. *Id*.

Like the other products of Chapter 49 that Defendant cites in its Motion, the printing is the critical component of the subject packaging materials because it is what makes them unique and suitable for their intended use. (Def. MSJ 42.) Consider a dictionary that has the wrong definitions or nautical charts that has incorrect information; these products would still be printed matter, but would be useless. Similarly, if the subject packaging materials had incorrect printed information, they would be useless.

Defendant acknowledges that the printing on the subject packaging materials is important and is required; however, Defendant persists in arguing that the printing on these materials is secondary. (Def. MSJ 43.)[20] Further, Defendant claims the record evidence does not show

---

[20]     Defendant attempts to support this claim by citing dicta from *Amcor Singen*. 425 F. Supp. 3d at 1305. However, dicta are simply "[w]ords of an option **entirely unnecessary for the decision of the case.**" *King v. Erickson*, 89 F.3d 1575, 1582 (Fed. Cir. 1996) (internal citations omitted), *rev'd sub nom. on other grounds*, 522 U.S. 262 (1998). *See also Smith v. Orr*, 855 F.2d 1544, 1550 (Fed.Cir.1988) ("[I]t is well established that a general

Plaintiff's customers purchase the packaging materials for its printed message instead of the barrier properties. (Def. Resp. to Pl. SMF ¶ 16.) However, they cite no such evidence. Instead, the evidence in this case shows how critical the printing on the subject goods is to Amcor's customers, according to Mr. Gee and Nicholas Mount, Vice President of Strategic Affairs of Amcor's customer that purchases Material Nos. Material Nos. 3345293, 3327379, 3327378, 3336337, 3335726, and 3344282. (Pl. Ex. 13 at 21, 37, 38-39, 43, 60, 61; Pl. Ex. 7 at 24, 62, 76.)

Further, without the printing on the packaging materials, the end customer (consumer) would not know what is inside the finished package or who made the product. (Pl. Ex. 7 at 80-81, 85.) This is a critical safety feature of the subject packaging materials. To highlight this requirement, consider a scenario with identically packaged pills – one is a life-saving drug and the other is poison that would cause certain death. How would a consumer know what pill to take without the critical information printed on the packaging material? While this may be an extreme example, the importance of the printing is highlighted as it could mean life or death.

Ultimately, the packaging material has become the medium for the critical printed information in this case because it has a communicative purpose. *See Aero Rubber*, 389 F. Supp. 3d at 1305 (stating that for printed matter with a communicative purpose, "[t]he product is the medium for the message, regardless of what other purpose it might have"). Therefore, whatever other functions the packaging material may have (*e.g.*, barrier), the printing is part of the essential nature of this product. *Id.*

The Court has already defined the tariff term "printed matter" in *Aero Rubber,* and there is no basis to change this definition. "Printed matter" is a broad category in Chapter 49, and simply

expression in an opinion, which expression is not essential to the disposition of the case, does not control a judgment in a subsequent proceeding.")

means articles that are printed where essential nature and use is determined by the fact of its being printed. Since the subject packaging materials are printed with text information, they are "printed matter" properly classified under Heading 4911.

### b.    Defendant's Attempt to Distinguish the *Aero Rubber* Case Is Misguided

In our motion for summary judgment, we assert that the Court's decision in *Aero Rubber* provides useful and persuasive guidance on the proper tariff classification of the printed packaging materials at issue in this case. Defendant, however, claims that the guidance from *Aero Rubber* is not applicable here because that case "did not involve merchandise similar to this case and did not involve the provisions of Heading 7607." (Def. MSJ 4, 45.) Further, Defendant states that "the interpretation of Note 2 to Section VII, HTSUS, essential to the holding of *Aero Rubber*" is not at issue in this case. (Def. MSJ 21, 47.) Finally, Defendant claims that "the Court's holding that any printing that has a communicative purpose becomes part of the essence of the product is overly broad and not persuasive for [their] analysis." *Id.*

While *Aero Rubber* did not involve the tariff classification of printed packaging materials, it did squarely address the interpretation of "printed matter" for Heading 4911, which is one of the pivotal legal issues in this case. For tariff classification cases, "judicial precedent holds weight" with respect to the legal construction of specific terms or provisions. *Amcor Singen*, 425 F. Supp. 3d at 1294 (citing *Mendenhall*, 5 F.3d at 1570); *see also Deckers Outdoor Corp. v. United States*, 752 F.3d 949, 966 (Fed. Cir. 2014) (holding "that the construction of a Customs classification provision by [the Federal Circuit] is binding upon both the Court of International Trade and subsequent panels of this court in later [] cases involving the same subheading or heading"). Therefore, although *Aero Rubber* may be factually distinguishable, it still provides relevant guidance. While Defendant appears to have a clear understanding of the classification treatment

of "printed matter" based on *Aero Rubber*, it attempts to diminish the scope of the Court's holding in that case. Defendant's arguments are unavailing.

Defendant claims that *Aero Rubber* "is inapplicable and unpersuasive" here since this case does not involve Section VII, Note 2. (Def. MSJ 48.) Setting aside the fact that the Court's decision in *Aero Rubber* was not based solely on the application of Section VII, Note 2 (an issue we discuss further below), Defendant's arguments acknowledge that if the subject packaging materials were classified as plastic packaging materials in Chapter 39, they would be classified in Heading 4911 (since Section VII, Note 2 would apply in that scenario). As a result, Defendant's classification analysis of printed aluminum foil packaging materials becomes contingent on the components of the packaging materials rather than their primary function and, therefore, completely undermines their own argument about essential nature and use.

Throughout its Motion, Defendant discusses the barrier property of the aluminum foil component in the subject packaging materials. (Def. MSJ 6-10, 12-14, 19, 21, 26, 28-29, 43.) Defendant claims that this barrier property makes the foil material the "essence" or "*sine qua non*" or "critical component" of the subject packaging materials and, therefore, the tariff classification of these materials cannot be changed from Heading 7607 by printing. (Def. MSJ 21, 26, 43.) To illustrate the fallacy of Defendant's argument, we have considered how printing would impact the packaging materials at issue in *Alcan Food Packaging* and *Amcor Singen.*[21]

Defendant relies heavily on the *Amcor Singen* case in support of its proposed classification for the subject materials. In *Amcor Singen*, the Court reviewed Formpack packaging materials, which consisted of "multiple layers of plastics combined with a single layer of foil sandwiched in

---

[21] Both cases concerned the tariff classification of multi-layer packaging materials made of aluminum foil and plastic film layers. *See* discussion *supra* at 6.

between the plastic layers" and determined these materials were properly classified in Subheading 7607.20.50 as backed aluminum foil. 425 F. Supp. 3d at 1292. Defendant correctly notes that in *Amcor Singen*, the Court determined that the aluminum foil layer of Formpack provided its essential character. (Def. MSJ 29-30.) Based on the decision in *Amcor Singen*, Defendant then claims that "[t]here is nothing about the printed Formpack flexible aluminum laminate at issue here that requires a departure from the conclusion provided by Amcor Singen that Formpack is classifiable at the six digit level as backed foil of 7607.20, HTSUS." (Def. MSJ 30.) This is incorrect.

In *Alcan Food Packaging*, the Court reviewed Flexalcon packaging materials, a composite material consisting of aluminum foil laminated with multiple layers of plastic film and determined this material was properly classified in Subheading 3921.90.40 as plastic film.[22] 929 F. Supp. 2d at 1351. Under Defendant's analysis, if Flexalcon packaging material was printed with the same text information at issue in this case, it would be properly classified in Heading 4911 as "printed matter" by operation of Section VII, Note 2. This would follow the analysis of *Aero Rubber* specifically as the printing would not be considered "merely incidental" to the primary use of the goods since it has a communicative purpose.

Both the Flexalcon and Formpack materials are designed to provide critical barrier properties based on their aluminum foil component. *See Alcan Food Packaging*, 929 F. Supp. 2d at 1349 (stating, for the Flexalcon, "there is no dispute that the aluminum foil imparts barrier properties that give the [packages] a three-year shelf life", but classifying the Flexalcon under

---

[22]     Even though the aluminum foil was indispensable to the function of Flexalcon, the plastic film layers predominated by quantitative measures and, therefore, directed classification of the packaging material as plastic film. *Alcan Food Packaging,* 929 F. Supp. 2d at 1350.

Heading 3921); *see also Amcor Singen*, 425 F. Supp. 3d at 1300 ("[a]luminum foil provides the impermeable barrier component to Formpack" and classifying the Formpack under Heading 7607).[23] Despite this similarity in barrier function, if these materials are printed with the same text information, under Defendant's interpretation, the Flexalcon may be classified as "printed matter" in Heading 4911, but the Formpack cannot. This makes no sense, and Defendant has provided no reasoning that would support such a ridiculous result.[24]

This simple example completely contradicts Defendant's claim that "[fo]r the Court to adopt plaintiff's claimed classification, the record evidence would have to show that Formpack's customers purchase the laminated aluminum material for its printed message and not because it is the premier protective barrier packaging or that the packaging increases the shelf-life for drugs and medical diagnostic tools." (Def. MSJ 43.) Under Defendant's approach, the tariff classification of multilayer aluminum foil/plastic film packaging materials would turn on how much plastic material is in the product rather than whether the printing is merely incidental to the primary use of the good. This is not correct. Instead, the critical issue for the classification of the flexible

---

[23]     The primary difference between the Formpack and Flexalcon is the number of plastic film layers, which Defendant appears to indicate is not a significant difference for aluminum foil packaging materials. (Def. MSJ 30 (stating that the product at issue in this case "is essentially the same as the Formpack product at issue in *Amcor Singen*, except the product here has one layer of plastic instead of two").)

[24]     There is no specific limitation in the language of the HTSUS or the ENs that would exclude a multilayer aluminum foil/plastic film packaging material classified in the aluminum foil tariff provision (Heading 7607) from being considered "printed matter" the same as a multilayer aluminum foil/plastic film packaging material classified in the plastic film provision (Heading 3921) as the Chapter 49 General EN is clear that "printed matter" is typically on paper, but may be on any material. *See* Chapter 49 General ENs (stating "In general the goods of this Chapter are executed on paper but the goods may be on other materials provided they have the characteristics described in the first paragraph of this General Explanatory Note").

packaging materials in this case is whether they are "printed matter" (as that term is properly defined) rather than the nature of the barrier property of the aluminum foil component.

Beyond the example above and contrary to Defendant's claim, the Court's review of Section VII, Note 2 in *Aero Rubber* is not a critical distinction that precludes the application of that decision to this case. While the Court in *Aero Rubber* applied Section VII, Note 2 (because the silicone bands at issue were classified in Section VII), this was not the only basis of the Court's decision. Instead, the interpretation of the tariff term "printed matter" in *Aero Rubber* was based primarily on the guidance from the Chapter 49 General ENs. However, Defendant makes the unsupported claim that "without the interplay of Note 2 to Section VII, the conclusion from *Aero Rubber*, 389 F. Supp. 3d at 1305, wherein the Court found that communicative printing comprised "part of the essence" of the product, would not be in accord with the guidance provided by the "General" EN for Chapter 49." (Def. MSJ 48.)

In *Aero Rubber*, the Court recognized that the scope of "printed matter" classified in Heading 4911 was broad, but excluded "printed matter where the printing is merely incidental (or of minor importance relative to something else)" based on the "merely incidental" language that appears in **both Section VII, Note 2 <u>and</u> the Chapter 49 General ENs**. 389 F. Supp. 3d at 1305 (emphasis added). While the Court's decision referenced the "merely incidental" language also found in Section VII, Note 2, the Court recognized that the Chapter 49 General ENs clarified what printing would be considered "merely incidental" or of minor importance relative to some other use by providing specific exceptions. *Id*. In fact the General ENs are clear on this point that "[w]ith the few exceptions referred to below, this Chapter covers all printed matter of which the essential nature and use is determined by the fact of its being printed with motifs, characters or pictorial representations." Chapter 49 General ENs.

Based on the guidance of the ENs, the Court in *Aero Rubber* distinguished between printing that has a communicative purpose and printing that is merely decorative, determining that the former comprises part of the essence of the product and the latter does not. 389 F. Supp. 3d at 1305-1306. As the Court recognized, only the examples included in the General ENs are excluded from the classification as "printed matter" in Chapter 49.[25] There are two categories of excluded goods provided in the ENs: 1) Articles where "the printing is merely incidental to their primary use" (for example, printed wrapping paper and printed stationary); and 2) Articles where "the printing is mainly for decorative or novelty purposes and does not affect the essential character of the goods" (for example, printed textile articles such as scarves or handkerchiefs and embroidery fabrics and prepared tapestry canvases bearing printed designs). *See* Chapter 49 General ENs. The printing on the subject packaging materials does not fall into either of these categories, so these products are not excluded from Chapter 49.

In *Aero Rubber*, the Court determined that only articles with "printing that is non-essential in nature should be excluded from Chapter 49." 389 F. Supp. 3d at 1305. Therefore, articles printed with communicative information are "printed matter" of Chapter 49 because such printing is considered essential. *Id.* at 1305-1306. In contrast, articles with merely decorative printing "that does not serve any purpose beyond aesthetics" are not "printed matter" because the printing is "considered incidental to the primary use." *Id.*

---

[25]    Defendant states that "[t]he examples of 'printed matter which appear in Chapter 49 HTSUS help elucidate what is meant by the phrase 'printed matter of which the essential nature and use is determined by the fact of its being printed with motifs, characters or pictorial representations.'" (Def. MSJ 41.) We agree. Contrary to Defendant's assertions, since the subject flexible packaging materials are not like the excluded examples (*i.e.*, they do not have decorative printing that is merely incidental to the primary use), they are not excluded from Chapter 49.

Despite this clear and straightforward guidance, Defendant claims the language in the *Aero Rubber* decision stating that communicative printing is "*part of the essence*" of a product is different from the guidance of the Chapter 49 General ENs. (Def. MSJ 48.) According to Defendant, the "General EN to Chapter 49 requires that the printing be *the essence* of the product in order to be classified as "printed matter." *Id*. Therefore, since only the Chapter 49 General ENs are applicable in this case (and not Section VII, Note 2) Defendant claims that the "analytical framework" of this case is distinguishable from *Aero Rubber*.

Defendant's claimed "distinction" in the *Aero Rubber* decision is based on what they claim to be the "interplay" of the language from Section VII, Note 2 with the Court's finding that "communicative printing comprised 'part of the essence' of the product" in that case. *Id*. However, the "part of the essence" language referenced by Defendant does not exist in Section VII, Note 2.[26] Further, at no point in the *Aero Rubber* decision is the interpretation of "printed matter" in Chapter 49 conditioned on the language in Section VII, Note 2. Instead, the Court first determined the meaning of "printed matter" based on the "merely incidental" language found in the Chapter 49 General ENs (and also in Section VII, Note 2). This was part of a proper GRI 1 analysis to determine the meaning of the terms of the headings at issue. Per GRI 1, the Court also considered the relative Section or Chapter Notes (Section VII, Note 2) to determine the proper classification of the silicone bands at issue in that case. The fact that the "merely incidental" language also appears in Section VII, Note 2 does not diminish or alter the meaning of this phrase in the Chapter

---

[26]     Section VII, Note 2 states "Except for the goods of heading 39.18 or 39.19, plastics, rubber, and articles thereof, printed with motifs, characters or pictorial representations, which are not merely incidental to the primary use of the goods, fall in Chapter 49."

49 General ENs or the Court's interpretation of this phrase for classification of "printed matter" under Heading 4911.[27]

Ultimately, the Court in *Aero Rubber* decided that when a printed article has both a utilitarian function and communicative purpose:

> The dispositive factor is therefore whether the printing component has a communicative purpose. Where the printing component is designed to communicate information, it cannot be considered merely incidental to the primary use of the goods and should therefore be classified under Chapter 49. Such a reading is consistent with the meaning of the tariff terms and the language of the General Explanatory Note to Chapter 49 and the examples provided. Unlike a printed component that is merely decorative, such as that of wrapping paper or stationery, one that is designed to have a communicative purpose carries greater importance than something that could reasonably be considered merely incidental.

*Aero Rubber*, 389 F. Supp. 3d at 1307. Therefore, as Defendant recognized in its Motion, for articles that have a dual purpose (utilitarian function and communicating a message), "***[t]he court need not decide which use is primary; it suffices that the printing component has a communicative purpose and is thus not merely incidental***." (Def. MSJ 47 (citing *Aero Rubber*, 389 F. Supp. 3d at 1307) (emphasis in original).) Such printed articles that communicate information are properly classified in Chapter 49, and specifically in Heading 4911, when not covered by any of the other headings in Chapter 49.

Based on the guidance of *Aero Rubber*, once the subject packaging materials are printed, we must consider whether they are "printed matter" of Heading 4911 as they would then be

---

[27]     While Section VII, Note 2 operates to exclude certain goods from Chapter 39, Defendant fails to appreciate that the goods must meet the terms of the heading where they are ultimately classified. The Court classified the silicone bands at issue in *Aero Rubber* based on its interpretation of the term "printed matter" in Heading 4911. That interpretation is based on the Court's analysis and not on Section VII, Note 2, which does not define "printed matter" for Chapter 49.

excluded from Heading 7607 by Chapter 76, Note 1(d).[28] This is precisely the same GRI 1 analytical framework applied in *Aero Rubber* (*i.e.*, define the terms of the headings and apply any relative Section or Chapter Notes).[29] There is no need to redefine the tariff term "printed matter" for Heading 4911 as this has already been established in *Aero Rubber*. Therefore, the only difference for this case is the application of a different (but still exclusionary) Section or Chapter Note. *See* discussion *supra* at 11-14; (Pl. MSJ 15-17.)

Based on the *Aero Rubber* decision, the threshold question for the classification analysis in this case is whether the printing on the subject packaging materials has a communicative purpose. Defendant acknowledges that the printing on the subject merchandise is text information included for its communicative purpose (*i.e.*, similar to the printing on silicone bands reviewed in *Aero Rubber*). (Def. MSJ 34-37 (recognizing the subject packaging materials are printed with identification information such as the product name, the manufacturer's name and address, the distributor's name, company logo, the drug name, quantity, instructions in English and French, patent numbers, and batch number).) Defendant also admits that it is the printing on each of the subject packaging materials that makes them unique. (Def. MSJ 7, n.4 (stating that the "only difference" between certain material numbers is "a slight difference in the specific design of the

---

[28]     As further discussed in Plaintiff's MSJ and, *supra* at 11-14, Chapter 76, Note 1(d) excludes from Heading 7607 aluminum foil goods that have been further processed such that they "assume the character of articles or products of other headings."

[29]     In *Aero Rubber*, the Court recognized, the language of Section VII, Note 2 was exclusionary and "presupposes that the subject goods will have a function, and that to fall under Chapter 49, the printing will be more than merely incidental in relation to that function." *Aero Rubber*, 389 F. Supp. 3d at 1304. Similarly, in this case, Chapter 76, Note 1(d) is an exclusionary note that presupposes an aluminum foil good will have a character and that to fall under Heading 4911, the goods will need to have assumed the character of articles of that heading (*i.e.*, become "printed matter" with printing that is not merely incidental to the primary use of the good).

drug manufacturer's chosen print for the print layer").) Further, Defendant admits that the printing on the subject packaging materials is important and may be required (*e.g.*, as part of a contractual term of a specific sale). (Def. MSJ at 43.) Finally, Defendant does not dispute that the subject packaging materials are labels or contain the same information as would be on labels. (Def. MSJ 35, 44; Def. Resp. to Pl. SMF ¶¶ 21-22, 24.) Like the silicone bands in *Aero Rubber*, the subject packaging materials are "printed matter" since they are printed with communicative text information.

Therefore, Defendant's attempt to diminish the application of the *Aero Rubber* case in support of its argument that the printing on the subject materials as "merely incidental" is unpersuasive. Defendant's claim that the essence of the subject packaging materials is limited to the barrier function is ridiculous once we consider that the printing conveys important information and is needed to identify the contents of the package (in addition to other required information). As noted by the Court in *Aero Rubber*, "it is hard to see why purchasers would incur the additional costs" of buying printed rather than plain packaging materials if the essence of the materials was merely based on their functional aspect. 389 F. Supp. 3d at 1307 n.10. Ultimately, Defendant is attempting to raise the same arguments that failed to persuade this Court in *Aero Rubber* and they should be rejected here as well. *See id*. at 1306-07 (rejecting Defendant's attempt to define "incidental" as including "everything but the primary use" and also rejecting Defendant's "overly narrow" view of the Chapter 49 General ENs "that wherever a product also serves a utilitarian function, printing may not constitute part of that product's essence").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied, that Plaintiff's Motion for Summary Judgment be granted, and that the Court grant us such other relief as may be appropriate.

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

Attorneys for Plaintiff
Amcor Flexibles Kreuzlingen AG
191 N. Wacker Drive
Suite 3700
Chicago, IL 60606
Telephone (312) 569-1000

By:      /s/ Wm. Randolph Rucker

Dated: June 7, 2021

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, *JUDGE***

| | | |
|---|---|---|
| AMCOR FLEXIBLES KREUZLINGEN AG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 16-00193 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>CERTIFICATE OF COMPLIANCE</u>**

  I, Wm. Randolph Rucker, counsel for Plaintiff, Plaintiff U.S.A., Inc., certify that this brief complies with the word limitation stated in Rule (B)(1) of the Court of International Trade's Chamber Procedures. Specifically, this brief contains **<u>13,818</u>** words (excluding the parts exempted by the Chamber Procedures) as determined by the word count feature of the word processing program used to create this brief.

<u>/s/ Wm. Randolph Rucker</u>

Dated: June 7, 2021

1

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, *JUDGE***

| | | |
|---|---|---|
| AMCOR FLEXIBLES KREUZLINGEN AG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 16-00193 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**<u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade ("USCIT"), Plaintiff, Amcor Flexibles Kreuzlingen AG (Amcor), responds to Defendant's Statement of Undisputed Material Facts (SOF), dated April 1, 2021, as follows:

**PRELIMINARY STATEMENT**

Pursuant to USCIT Rule 56.3, motions for summary judgment must include a separate statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The statement must be "short and concise" and limited to "material facts." USCIT R. 56.3. We object to Defendant's statement on the following bases: (1) several of the statements are not short or concise, but rather comprise multiple issues; (2) several of the statements are not limited to material facts, but also contain opinion, commentary, arguments, and statements of law; and (3) several statements do not accurately reflect the cited authority. Notwithstanding, and without waiving these objections, we respond to Defendant's statement as follows.

Although we deny or object to several of Defendant's statements, we respectfully assert that none of our responses gives rise to a disputed material fact that would preclude the Court from considering or granting Plaintiff's motion for summary judgment.

1

## RESPONSES

1.     The merchandise at issue are two types of Formpack® packaging material developed by Amcor and used to make either a finished aluminum blister pack for a pharmaceutical drug or a finished aluminum pouch package for a healthcare diagnostic device. Pl. Public Ex. 1 at Resp. 6 and 8.

**Response:**     **Disputed in part. All the packaging materials at issue are used to make a blister pack for a pharmaceutical drug or a finished aluminum pouch package for a healthcare diagnostic device, but avers that the finished pouch packages or blister packs are made after importation. (Def. Resp. to Pl. SMF ¶ 15.) Material Numbers 3327397, 3327378, 3336337, 3335726, 3344282 and 3344282 are Formpack, however, Material No. 3326421 is not Formpack. Plaintiff avers that due to the passage of time between the preparation of the answers to Defendant's First Interrogatories and the deposition of Amcor's 30(b)(60 witness, the individuals involved in answering the Interrogatories were no longer employed by the Plaintiff. While the Interrogatories do state that the materials at issue are Formpack, Plaintiff's 30(b)(6) witness' testimony that Material No. 3326421 is not Formpack is correct. (Pl. Ex. 5 at 71; Pl. Ex. 3.) The Government acknowledges the veracity of this testimony in its Motion. (Def. MSJ 6 fn. 3.) Plaintiff further avers that any dispute regarding this fact is not material and does not compel the legal conclusion asserted by Defendant.**

2.     Amcor is a self-described global leader in packaging solutions. Pl. Public Ex. 5 at 91.

**Response:**     **Undisputed, but avers the testimony is that "Amcor is really a global leader in packaging," and does not discuss "solutions." (Pl. Ex. 5 at 91.) Plaintiff further**

2

**avers that this fact is not material and does not compel the legal conclusion asserted by Defendant.**

3.      One type of product at issue is Formpack® a flexible aluminum packaging material, identified by material numbers 3327397, 3327378, 3336337, 3335726, 3344282 and 3344282, which is used to form trays which are part of "Tropical blister packs." Pl. Public Ex. 1 at Resp. 3, 6 and 8, Pl. Public Ex. 5 at 36-59; Pl. Conf. Ex. 3.

**Response:      Undisputed.**

4.      These Formpack blister tray materials were developed for packaging pharmaceutical drugs and meet all applicable Food and Drug Administration and European Union regulations required for such materials. Pl. Public Ex. 5 at 36-43; Def Public Ex. 2 Amcor Tropical Coldform Blister Webpage; Def. Conf. Ex. 3, Formpack Certificate of Compliance AMCOR0010–AMCOR0015.

**Response:      Undisputed. However, Plaintiff avers that all of the materials listed meet all applicable Food and Drug Administration and European Union regulations required for such materials and such packaging, including the requirements for labeling information. (Pl. Ex. 5 at 28; Pl. Ex. 13 at 21 ("there are FDA requirements on what information needs to be on the primary packaging"), 37 ("it is correct that the driving force for the printing for the domestic market material whatever is required by the regulatory"), 38-39 ("FDA regulations allow for an abbreviated amount of information on the primary package itself"), 43 ("for the foil itself, the unprinted foil, it's identical for all countries, however, each country requires individual printing"), 60 (the printing on the material "is submitted [in] the NDA" to the FDA), 61 ("I would consider that to be printed matter"); Pl. Ex. 7 at 24 ("anything that is part of [a diagnostic**

3

**product], the information that goes on to a printing or a labeling is regulated by the FDA"), 62 ("The information is an FDA requirement"), 76 (the text printed on the foils is "informational based on the regulatory requirements").)**

5.    The other product at issue is also in the Formpack product line identified as Material No. 3326421. Pl. Public Ex. 1 at Resp. 6, and 8.

**Response:    Disputed. Material No. 3326421 is not Formpack. See Pl. Resp. to Def. SMF at ¶ 1. Plaintiff avers that this disputed fact is not material and does not compel the legal conclusion asserted by Defendant.**

6.    Material No. 3326421 is a flexible aluminum packaging material used to form a pouch or sachet to package a blood glucose measurement device for the healthcare industry. *See* Pl. Public Ex. 5 at 16-34; Pl. Conf. Ex. 9 "Print Proofs" attached as AMCOR0027; Def. Pub. Ex. 5, Amcor Pouch Aluminum Laminate Webpage. Pl. Public Ex. 1 at Resp. 6, and 8.

**Response:    Undisputed.**

7.    Material No. 3326421 meets all applicable Food and Drug Administration and European Union regulations required for such material. Def. Conf. Ex. 3, Formpack Certificate of Compliance AMCOR0010–AMCOR0015.

**Response:    Undisputed, but avers that Material No. 3326421 meets all applicable Food and Drug Administration and European Union regulations required for such materials and such packaging, including the requirements for labeling information. (Pl. Ex. 5 at 28; Pl. Ex. 13 at 17, 21, 22, 37, 38-39, 43, 48, 50, 60, 61, 66; Pl. Ex. 7 at 24, 26, 30, 62, 76, 79, 85, 87, 90-91.)**

8.    The aluminum foil in the flexible aluminum packaging materials at issue used in either the blister package or pouch package do not exceed 0.2mm in thickness exclusive of backing. Pl. Conf.

Ex. 1 at Resp. 3 and 4.

**<u>Response</u>:**     **Undisputed.**

9.      The flexible aluminum packaging materials at issue are constructed of one layer of plastic film laminated to a single layer of aluminum foil with a heat-sealable coating on the other side of the foil. Amended Complaint ¶ 7; Pl. Conf. Ex. 1 at Resp. 3 and 4.

**<u>Response</u>:**     **Undisputed, but avers that all of the packaging materials are also printed with text and product information (Def. Resp. to Pl. SMF ¶ 12; Pl. Ex. 9; Pl. Ex. 5 at 27, 70.)**

10.    The aluminum foil in the flexible aluminum packaging materials at issue are "backed" by a layer of laminated plastic. Amended Complaint at ¶¶31 and 32.

**<u>Response</u>:**     **Undisputed.**

11.    The aluminum foil in the flexible aluminum packaging materials at issue provide for an impermeable barrier to moisture, light, oxygen, and other gases from entering the finished package. Pl. Public Ex. 5 at 36, 64 and 65; Pl. Public Ex. 1 at Resp. 6, and 8.

**<u>Response</u>:**     **Undisputed, but avers that the packaging materials at issue are imported in rolls as a flat material in slit reel or coil form, not as a package. (Def. Resp. to Pl. SMF at ¶¶ 14-15; Pl. Ex. 12; Pl.'s Ex. 1 at ¶ 9; Pl. Ex. 9; Pl. Ex. 5 at 21, 28, 32, 40, 44, 46, 71, 75; Pl. Ex. 13 at 13; Pl. Ex. 10 at 44; Pl. Ex. 11 at 34; Pl. Ex. 7 at 11, 17, 45, 88.) Further avers that the text and product information on the packaging materials informs the customer of what is in the finished package. (Pl. Ex. 5 at 42.)**

12.    The environmental protections afforded by the aluminum foil in the flexible aluminum packaging materials at issue allow for an increased shelf life of the

contents of the finished package. Pl. Public Ex. 5 at 35-38. Def. Ex. 4, Formpack

Tropical Blister Sales Brochure AMCOR0016–AMCOR0019.

**Response:**          **Undisputed, but avers that the packaging materials at issue are imported in**

**rolls as a flat material in slit reel or coil form, not as a package. (Def. Resp. to**

**Pl. SMF at ¶¶ 14-15; Pl. Ex. 12; Pl.'s Ex. 1 at ¶ 9; Pl. Ex. 9; Pl. Ex. 5 at 21, 28,**

**32, 40, 44, 46, 71, 75; Pl. Ex. 13 at 13; Pl. Ex. 10 at 44; Pl. Ex. 11 at 34; Pl. Ex.**

**7 at 11, 17, 45, 88.) Further avers that the text and product information on the**

**packaging materials informs the customer of what is in the finished package.**

**(Pl. Ex. 5 at 42 ; Pl. Ex. 7 at 80-81 (they do not use adhesive labels because if**

**the label "comes off then based on the regulations, the customer is not to use**

**what is contained in the pouch."); 85 ("we interpret the regulation to require**

**that we have to identify to the customer, at whatever level packaging they are**

**interfacing with, what is contained therein.").)**

13.     The flexible aluminum packaging material at issue are imported in rolls, or split reels with

any printing thereon appearing in a repeated pattern covering the length and width of the roll. Pl.

Public Ex. 5 at 74-76; Public Ex. 12 "Product Reel Pictures," AMCOR0034- 38.

**Response:**          **Disputed in part. Undisputed that the flexible packaging materials at issue are**

**printed and are imported in rolls. (Pl. Ex. 1 at ¶ 11; Ex. 12; Pl. Ex. 5 at 44, 46,**

**75; Pl. Ex. 13 at 24; Pl. Ex. 10 at 44; Pl. Ex. 11 at 34; Pl. Ex. 7 at 17, 45, 88.)**

**Plaintiff disputes that the printing is a pattern that covers the length and width**

**of the roll. (Pl. Ex. 10 at 45, 88, 110; Pl. Ex. 11 at 20-21, 30-38; Pl. Ex. 8 at 180.)**

**Avers the testimony cited does not support the assertion that the printing is a**

**pattern. (Pl. Ex. 5 at 74-76.) Further avers that Plaintiff's expert has testified**

that the printing that is on the imported roll material at the time of importation consists of "individual labels that are replicated across the foil during the printing process (called imposition)" which is the "manifestation of the desire to efficiently print multiple labels while passing through a printing press. (Pl. Ex. 11 at 34; Pl. Ex. 10 at 88.). In this printing process, "an array of labels is laid out on the image carrier (or master), in this case a gravure cylinder, and therefore appear in this manner on any print sample." (Pl. Ex. 11 at 34; Pl. Ex. 10 at 99-102, 107, 111, 128.) Plaintiff avers this testimony was corroborated by third-party witness, Andrew Gee, who stated that the purpose of the repetitions of the preprinted information is because "it comes in as a long roll, so that will be cut during the packaging process into multiple individual packages, and the information on the roll itself will be transmitted. It's designed to fit on the individual package blisters." (Pl. Ex. 13 at 24.)

**Objection:**     Pursuant to USCIT Rule 56(c)(1), "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . ." Defendant has not cited any materials in the record to support its asserted fact that the printing on the packaging materials at issue appear in a "repeated pattern covering the length and width of the roll." Instead, this statement is a conclusory opinion or legal conclusion that is not the subject of a proper Rule 56.3 Statement of Material Fact. (Def. MSJ 31-37.)

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

7

Attorneys for Plaintiff
Amcor Flexibles Kreuzlingen AG
191 N. Wacker Drive
Suite 3700
Chicago, IL 60606
Telephone (312) 569-1000

By:    /s/ Wm. Randolph Rucker

Dated: June 7, 2021

## <u>CERTIFICATE OF SERVICE</u>

Wm. Randolph Rucker certifies that he is an attorney with the law firm of Faegre Drinker

Biddle & Reath LLP, with offices located at 191 North Wacker Drive, Suite 3700, Chicago, Illinois

60606, and that on June 7, 2021 on behalf of the Plaintiff herein, he served the attached Response

to Defendant's Cross-Motion for Summary Judgment:

Mr. Edward Kenny
U.S. Department of Justice
Commercial Litigation Branch – Civil Division
26 Federal Plaza
Room 346
New York, NY 10278

the attorney for the Defendant herein, by electronic service in the CM/ECF System of the Court of

International Trade.

<u>/s/ Wm. Randolph Rucker</u>

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, *JUDGE***

| | |
|---|---|
| AMCOR FLEXIBLES KREUZLINGEN AG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

Court No. 16-00193

**TABLE OF CONTENTS FOR EXHIBITS**

| Exhibit | Full Citation | Abbreviated Citation |
|---|---|---|
| **28** | Dictionary.com, Pre-fabricate, available at https://www.dictionary.com/browse/prefabricated (last visited May 21, 2021) | |
| **29** | HQ 963711 (June 12, 2001), available at https://rulings.cbp.gov/search?term=963711&collection=ALL&sortBy=RELEVANCE&pageSize=30&page=1 (last visited June 7, 2021) | |