**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

———————————————————————————————

|  |  |  |
|---|---|---|
| AMCOR FLEXIBLES KREUZLINGEN AG. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Court No. 16-00193** |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————————————————

---

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

---

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney in Charge
International Trade Field Office

AIMEE LEE
Assistant Director

EDWARD F. KENNY
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, NY 10278
Attorneys for Defendant
Tel. (212) 264-0480

*Of Counsel*:
Paula S. Smith
Assistant Chief Counsel
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

    I.    THE PRINTED AND BACKED ALUMINUM FOIL
    PACKAGING MATERIALS AT ISSUE ARE CLASSIFIABLE UNDER
    HEADING 7607 HTSUS.................................................................................. 4

    II.   PRINTING IS NOT COVERED BY THE PLAIN MEANING OF
    THE TERMS OF NOTE 1(d) AND THE *ALCAN* FEDERAL CIRCUIT
    DECISION DOES NOT CHANGE THIS RESULT................................... 5

    III.  THE *AMCOR FLEXIBLES SINGEN* DECISION IS RELEVANT AND
    ASSISTS IN THE UNDERSTANDING OF THE FLEXIBLE PACKAGING
    MATERIALS AT ISSUE HERE................................................................... 9

    IV.  SUBHEADING 7607.20.10 COVERS THE PRINT ON THE BACKED
    ALUMINUM FOIL PACKAGING MATERIALS................................... 11

    V.   AMCOR'S FLEXIBLE ALUMINUM PACKAGING MATERIALS
    ARE NOT LABELS ....................................................................................... 15

    VI.  AMCOR'S FORMPACK IS NOT PROPERLY CLASSIFIED UNDER
    HEADING 4911 AS THE PRODUCTS DO NOT HAVE AN ESSENTIAL
    NATURE AND USE WHICH IS DETERMINED BY THE FACT OF ITS
    BEING PRINTED ......................................................................................... 17

    VII. THE AERO RUBBER DECISION IS NOT PERSUASIVE WHEN
    CONSIDERING THE CLASSSIFCAITON OF AMCOR'S PACKAGING
    MATERIAL .................................................................................................... 21

CONCLUSION................................................................................................................. 23

# TABLE OF AUTHORITIES

## Cases

Aero Rubber Co., Inc. v. United States,
   389 F. Supp. 3d 1296 (Ct. Int'l Trade 2019)................................................... 21, 22

Alcan Food Packaging (Shelbyville) v. United States,
   771 F.3d 1364 (Fed. Cir. 2014)......................................................................... 5, 7, 8

Amcor Flexibles Singen Gmbh v. United States,
425 F.Supp.3d 1287 (Ct. Int'l Trade 2020)...................................................... 10, 11, 17, 18, 20

Grecian Magnesite Mining, Indus. & Shipping Co. v. Commissioner,
926 F.3d 819 (D.C. Cir. 2019) .................................................................................... 6

Hall v. United States Dept. of Agriculture,
984 F.3d 825 (9th Cir. 2020)...................................................................................... 6

Marubeni Am. Corp. v. United States,
821 F. Supp. 152 (Ct. Int'l Trade 1993) ................................................................ 18

Meyer Corp v. United States,
255 F.Supp.3d 1348 (Ct. Int'l Trade 2017) .................................................... 12, 13

Sigma–Tau HealthScience, Inc. v. United States,
838 F.3d 1272 (Fed.Cir.2016) .................................................................................. 9

Travelers Indem. Co. v. Mitchell,
925 F.3d 236 (5th Cir. 2019) .................................................................................... 6

**Statutes**

1 U.S.C. § 1 .............................................................................................................. 12, 13

18 U.S.C. § 923(i) .......................................................................................................... 22

26 U.S.C. § 5842 ............................................................................................................ 22

**Harmonized Tariff Schedule of the United States**

GRI 1 ................................................................................................................................ 5

GRI 3(b) .......................................................................................................................... 10

Note 1(k) to Chapter 72 ................................................................................................ 8, 9

Note 1(d) to Chapter 76 ........................................................................................... *passim*

Note 2 to Section VII ..................................................................................................... 21

Chapter 49 ................................................................................................................. *passim*

Heading 4901

Subheading 4901.91.00 ................................................................. 19

Subheading 4901.99.00.................................................................................................... 19

Heading 4902 ................................................................................................................... 19

Heading 4911 .............................................................................................................. *passim*

Subheading 4911.99.80..................................................................................................... 3

Chapter 72 ..................................................................................................................... 8, 9

Chapter 76

Heading 7607 ................................................................................................................ *passim*

Subheading 7607.20........................................................................................................ 12

Subheading 7607.20.10........................................................................... 3, 11, 12, 13, 15

Subheading 7607.20.50............................................................................................ 3, 11, 12

Chapter 93 .......................................................................................................................... 22

Chapter 95 .......................................................................................................................... 22


**Regulations**

27 CFR § 478.92 ................................................................................................................ 22

27 CFR § 479.102 .............................................................................................................. 22

39 CFR § 20.1 .................................................................................................................... 18


**Other Authorities**

Explanatory Note to Chapter 49 ....................................................................................... 19

Explanatory Note to Chapter 72 ............................................................................... 6, 7, 8

Explanatory Note to Heading 74.10................................................................................. 15

Explanatory Note to Chapter 76 ............................................................................... 7, 17

Explanatory Note to Heading 7607................................................................................ 3, 15

Antonin Scalia & Bryan A. Garner, Reading Law:
The Interpretation of Legal Texts 152 (2012)............................................................................ 6

*Coating*, Cambridge Dictionary (on line)
  https://dictionary.cambridge.org/us/dictionary/english/coating
  (last visited on 6/29/2021). ........................................................................................ 8

*Coating*, Webster's Third International Dictionary (1968 edition)................................................. 8

*Label*, Merriam-Webster,
  https://www.merriamwebster.com/dictionary/label
  (last visited March 8, 2021) ................................................................................... 16, 17

*Reinforce*, Cambridge Dictionary (on line)
  https://dictionary.cambridge.org/us/dictionary/english/reinforce
  (last visited on 6/29/2021) .................................................................................... 7, 8

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

```
_____        :
                                                 :
AMCOR FLEXIBLES KREUZLINGEN AG,                  :
                                                 :
                        Plaintiff,               :        Court No. 16-00193
                                                 :
                                                 :
                v.                               :
                                                 :
UNITED STATES,                                   :
                                                 :
                        Defendant.               :
_____        :
```

### DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
### ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States (the Government), submits this reply memorandum in

further support of our cross-motion for summary judgment. For the reasons discussed in our

moving brief and set forth below, we respectfully request that the Court enter an Order: denying

plaintiff, Amcor Flexibles Kreuzlingen AG's (Amcor), motion for summary judgment; granting

our cross-motion for summary judgment; and dismissing this action in its entirety.

### <u>INTRODUCTION</u>

This case involves the classification of two types of Amcor's highly specialized flexible

aluminum packaging material, each constructed of one layer of plastic film laminated to a single

layer of aluminum foil with a heat-sealable coating on the other side of the foil, and used to

package pharmaceuticals drugs or diagnostic devices because of its high barrier properties.

One type of product at issue is Formpack® Coldform Laminate (comprising 6 of the 7

material numbers at issue) which is used to form trays which are part of "Tropical blister packs."

Pl. Public Ex. 5 at 38-59. These Formpack materials were developed for packaging

pharmaceutical drugs and meet all applicable Food and Drug Administration regulations required

for such packaging. Amcor's Resp. to Stmt. of Facts at Response 4, Docket No. 68. The principal advantage of using Formpack for blister packs is that the use of aluminum offers a near complete barrier for water and oxygen, providing for an extended product expiration date. Amcor's Resp. to Stmt. of Facts at Response 11, 12.

The other product at issue is identified as Material No. 3326421.[1] Pl. Public Ex. 1 at Resp. 6, 7, and 8. Material no. 3326421 is so similar to Formpack that Amcor identified it as Formpack in its discovery responses and only recently clarified that it is not technically in the Formpack product line. Material No. 3326421 is a flexible aluminum packaging material used to form a pouch or sachet to package a blood glucose measurement device. Amcor's Resp. to Stmt. of Facts at Response 6. The pouch material has the same aluminum barrier benefits as the Tropical blister packs as noted above, however, the pouch is designed to accept larger items such as healthcare diagnostic devices. Amcor's Resp. to Stmt. of Facts at Response 6, 11, 12. The pouch material meet all applicable Food and Drug Administration regulations required for such packaging. Amcor's Resp. to Stmt. of Facts at Response 7.

---

[1] As noted in our moving papers, the record contains contradictory information for Material No. 3326421. Plaintiff identified Material No. 3326421 as included in the Formpack® product line in its formal interrogatory responses. *See* Pl. Public Ex. 1 at Resp. 6, 7, and 8. Separately, plaintiff's Rule 30(b)(6) witness testified that he did not believe Material No. 3326421 was in the Formpack® product line. Pl. Public Ex. 5 at 17, 18). The witness also testified that Material 3326421 had sufficient aluminum thickness to provide an impermeable barrier to moisture, light, oxygen, and other gases which is required for packaging suitable for the healthcare field. Pl. Public Ex. 5 at 21-24. Plaintiff in its opposition papers now says Material No. 3326421 is not technically in the Formpack product line. However as the testimony shows Material No. 3326421 is so similar to Formpack in its key qualities including barrier protection, that it is indistinguishable from the Formpack product line and for the sake of brevity we include Material No. 3326421 when we discuss Formpack generally in this brief.

The flexible aluminum packaging materials at issue here are also printed. Such printing does not reduce the materials' ability to be made into unparalleled high performance pharmaceutical packages.

By its plain terms, Subheading 7607.20.10 of the Harmonized Tariff Schedule of the United States (HTSUS), which provides for "Aluminum foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm: Backed: Covered or decorated with a character, design, fancy effect or pattern" correctly encompasses Amcor's flexible aluminum packaging materials consisting of a layer of aluminum foil with a layer of plastic on one side and a coating on the other. Amcor believes (incorrectly) that the printing transforms the high barrier packaging material into simply a medium for the printed logo and text to become "other printed matter" under Subheading 4911.99.80, HTSUS, or is alternatively classified under Subheading 7607.20.50, HTSUS as "other backed aluminum foil." Amcor argues that classification under Heading 7607 is wrong because we: 1) misconstrued or misapplied the cited case law, 2) failed to understand that Amcor's flexible packaging materials comprise mere "labels" excluded from Heading 7607 by the Explanatory Notes, and 3) failed to recognize that backed aluminum foil at issue, which otherwise meets the requisites of Heading 7607, cannot be classified in any subheading of Heading 7607 because the merchandise is printed with communicative text which causes classification in Chapter 49. *See* Amcor Opp. Brief at 28. Plaintiff's theories, however, are undermined by the plain meaning of the tariff, a correct reading of the case law, and the applicable Explanatory Notes.

As a preliminary matter, the parties agree on many of the facts in the case. Specifically, Amcor agrees with all of our thirteen statements of undisputed material facts, with the exception

of two that it partially disputes.  Plaintiff's averments set forth in these partial denials, as well as the exhibits, briefs, and samples which are part of the motion, render such partial disputes either immaterial, or irrelevant and does not preclude the entry of summary judgment in the Government's favor.  *See* Amcor's Resp. to Stmt. of Facts, Docket No. 68.

We set forth our response to Amcor's arguments below.

## ARGUMENT

### I.     THE PRINTED AND BACKED ALUMINUM FOIL PACKAGING MATERIALS AT ISSUE ARE CLASSIFIABLE UNDER HEADING 7607 HTSUS

Amcor asserts that the Government has failed to establish that the flexible packaging materials at issue are classifiable pursuant to Heading 7607 HTSUS.  *See* Amcor's Opp. Brief at 6 (Point III).  Heading 7607 provides for the classification of products with the following attributes:

> Aluminum Foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm.

Amcor concedes that the flexible aluminum packaging materials at issue are comprised of aluminum foil, printed, backed with a layer of plastic, and that the aluminum foil exclusive of backing does not exceed 0.2 mm, thus meeting the very terms of the provision.  *See* Amcor's Resp. to Def's Material Facts Not in Issue at Responses 8-10 and 13.  *See also* Amcor's Opp. Br. at 5, 8 ([T]here is no dispute that the subject materials are "backed" aluminum foil.").  Accordingly, Amcor's claim that we failed to establish that the goods at issue are classifiable pursuant to Heading 7607 HTSUS, is meritless.

## II. PRINTING IS NOT COVERED BY THE PLAIN MEANING OF THE TERMS OF NOTE 1(d) AND THE *ALCAN* FEDERAL CIRCUIT DECISION DOES NOT CHANGE THIS RESULT

As part of the classification analysis under GRI 1, we look to Note 1(d) to Chapter 76.

Note 1(d) provides as follows:

> (d) Plates, sheets, strip and foil
>
> \* \* \*
>
> Headings 7606 and 7607 apply, *inter alia*, to plates, sheets, strip and foil with patterns (for example, grooves, ribs, checkers, tears, buttons, lozenges) and to such products which have been perforated, corrugated, polished or coated, provided that they do not thereby assume the character of articles or products of other headings.

We note that the enumerated processes do not include printing, and therefore, this Note does not apply.

Plaintiff claims, however, that the modifying clause "*inter alia*", meaning "among other things", not only modifies the immediately adjacent phrase "to plates, sheets, strip and foil with patterns (for example, grooves, ribs, checkers, tears, buttons, lozenges)" but also modifies the non-adjacent phrase appearing after the parenthetical "and to such products which have been perforated, corrugated, polished or coated" thus concluding it is not an exclusive list of processes. Plaintiff argues that "printing," can, therefore, be impliedly included in the list of processes by the application of the phrase "*inter alia*" to the entirety of Note 1(d). *See* Amcor Opp. Brief at 13, 14.

Amcor's statutory construction is incorrect as it violates the Nearest-Reasonable-Referent Canon. What follows the "inter alia" clause is not merely one list of exemplars but rather two distinct groups – one involving "things" and the other involving "processes." Where the syntax of the statute being analyzed involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent. *See*

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 152 (2012); *Grecian Magnesite Mining, Indus. & Shipping Co. v. Commissioner*, 926 F.3d 819, 824 (D.C. Cir. 2019); *Travelers Indem. Co. v. Mitchell,* 925 F.3d 236, 243 (5th Cir. 2019), *Hall v. United States Dept. of Agriculture*, 984 F.3d 825, 837-838 (9th Cir. 2020).  In the relevant portion of Note 1(d), the two phrases are not of parallel construction.  The first phrase lists "things" and starts with the wording "to plates, sheets, strip . . ."  The second phrase after the parenthetical lists a finite set of processes and starts with the wording, "and to such products which have been perforated, corrugated, polished . . ."  The disparity of the syntax between the two phrases is clear and shows they are not parallel.  The result is that the Latin phrase for "among other things" applies only to the first phrase, *i.e.*, "to plates, sheets, strip . . ." according to the Nearest-Reasonable-Referent Canon.  Additionally, the plain meaning of the clause as a whole, reveals that grammatically, the "among other things" (*inter alia*) clause refers to the list of "things" (*i.e.* to plates, sheets, strip and foil with patterns) and not processes (*i.e.* perforation, corrugation, polishing and coating).  For this reason, the statute's list of processes is finite and relates only to products which have been perforated, corrugated, polished or coated.  The word "printing" is not in the finite list in Chapter 76, Note 1(d).

This reading makes logical sense as Heading 7607 accounts for foil products "whether or not printed" and thus there is no reason for Note 1(d) to include printing as an exclusionary process.  Nonetheless, Amcor focuses on the General Explanatory Notes to Chapter 72 to argue that surface printing is an included process within Note 1(d).  Further, contrary to Amcor's assertion at page 14 of its Opposition Brief, we did not state in our cross-motion brief that printing is not included in the enumerated list of processes in the General Explanatory Notes applicable to Chapter 72.  What we did say, and what matters to the analysis here, is that "the

plain language of [Chapter 76] Note 1(d) does not include 'printed' in the enumerated list of processes."

The Federal Circuit's decision in *Alcan Food Packaging (Shelbyville) v. United States,* 771 F.3d 1364 (Fed. Cir. 2014) considered the application and legal interpretation of Note 1(d) to Chapter 76.  Amcor contends that we misinterpreted the *Alcan Food Packaging* Court's clarification of Note 1(d).  Amcor Opp. Br. at 11.  Amcor notes that the *Alcan Food Packaging* decision involved the application of Chapter 76, Note 1(d) to the Flexalcon product, the manufacturer of which involved the process of covering the aluminum foil with plastic lamination on two sides.  Amcor argues that the process of covering the aluminum with plastic lamination on two sides is not one of the processes explicitly included in the enumerated processes set forth in Chapter 76, Note 1(d), namely perforation, corrugation, polishing and coating.  *See* Amcor Opp. Brief at 13.  Plaintiff noted that the Federal Circuit in *Alcan Food Packaging* referenced the General Explanatory Note to Chapter 72 and stated the following:

> Note 1(d) to Chapter 76, which is part of the statute, provides a two-part clarification, stating that heading 7607 "appl[ies], *inter alia,* to plates, sheets, strip and foil with patterns ... and [1] to such products which have been perforated, corrugated, polished or coated, [2] provided that they do not thereby assume the character of articles or products of other headings." (Bracketed numbers added.) The first part of that clarification is reinforced by the (nonstatutory) General Explanatory Note to Chapter 76: that note incorporates part of the General Explanatory Note to Chapter 72 (covering iron and steel products), which explains that "finished products may be subjected to further finishing treatments," including "coating with ceramics or plastics" and "[l]amination."

*Alcan Food Packaging*, at 1368-69.  The cited Federal Circuit analysis states that the Explanatory Notes associated with Chapter 72 "reinforced" what is in Note 1(d) of the statute. The word "reinforce" is defined with regards to an idea or opinion as follows: "it provides more

proof or support for it and makes it seem true." *See* Cambridge Dictionary (on line) https://dictionary.cambridge.org/us/dictionary/english/reinforce (last visited on 6/29/2021). The CAFC's reference in the above *Alcan Food Packaging* cite to "coating with ceramics or plastics" and "[l]amination" from the Explanatory Notes associated with Chapter 72 was merely to "reinforce" its reading of the statutory terms of Note 1(d), and thus not to expand the scope of that statutory Note.

Significantly, the word "coating" is explicitly in Note 1(d) and the definition of "coating" includes "a layer of a particular substance that covers a surface." *See* Cambridge Dictionary (on line) https://dictionary.cambridge.org/us/dictionary/english/coating (last visited on 6/29/2021). *See also* Webster's Third International Dictionary (1968 edition) defining coating as a "layer of any substance used as cover, protection, decoration, or finish." Under these definitions of "coating," plastic lamination can be considered a form of coating.

As noted above, the processes included in statutory Chapter 76, Note 1(d) are finite, including the processes of perforation, corrugation, polishing and coating. Had Congress intended either more or less finishing processes be included in Chapter 76, Note 1(d) Congress would have explicitly included or excluded such processes in that list. For instance, Chapter 72, Note 1(k) regarding flat-rolled products of Chapter 72 HTSUS, states in applicable part:

> Flat-rolled products include those with patterns in relief derived directly from rolling (for example, grooves, ribs, checkers, tears, buttons, lozenges) and those which have been **perforated, corrugated or polished**, provided that they do not thereby assume the character of articles or products of other headings (emphasis added)

Congress did not include "coating" in the list of processes included in Chapter 72, Note 1(k), however, the term appears in Chapter 76 Note 1(d). We should not assume that the omission of "coating" is meaningless, just as we should not ignore the inclusion of the term in

Chapter 76, Note 1(d).  Following Amcor's approach we would simply look to the non-binding

World Customs Organization's Explanatory Notes associated with Chapter 72 to alter these

congressionally ratified statutory notes to allow the word "coating" to be added, if need be, in

Chapter 72 Note 1(k) and "printing" in Chapter 76 Note 1(d).  Plaintiff's reading would render

inconsequential the unambiguous terms of the Chapter Notes in favor of the non-statutory World

Customs Organization EN and thereby limit Heading 7607  *See, Sigma–Tau HealthScience, Inc.*

*v. United States,* 838 F.3d 1272, 1281 (Fed. Cir. 2016) (Although the examples in the

Explanatory Notes are probative and sometimes illuminating, we shall not employ their limiting

characteristics, to the extent there are any, to narrow the language of the classification heading

itself).  Accordingly, the plain language of Chapter 76, Note 1(d) confirms that printing does not

preclude classification of a product under Heading 7607.

    Importantly, notwithstanding the inclusion or exclusion of printing as a process

contemplated by Chapter 76, Note 1(d), the printing on the flexible aluminum packaging

materials does not transform the packaging materials into printed matter of Chapter 49.  The

packaging materials are defined by their ability to be made into a high performance package with

high barrier qualities.  Amcor markets these traits and its customers order the materials based on

these specialized characteristics.  It is obvious that these aluminum packaging materials are not

products which have an essential nature and use defined by the printing that appears on it.

### III.    THE *AMCOR FLEXIBLES SINGEN* DECISION IS RELEVANT AND ASSISTS IN THE UNDERSTANDING OF THE FLEXIBLE PACKAGING MATERIALS AT ISSUE HERE

    Amcor further takes issue with our reliance on *Amcor Flexibles Singen Gmbh v. United*

*States,* 425 F.Supp.3d 1287 (Ct. Int'l Trade 2020) (*Amcor Singen*) citing as the critical difference

that the product here is printed.  Amcor Opp. Br. at 6.  This decision is relevant because it

considered similar packaging materials that have the same features imparted by the foil that are

present in the packaging materials here. The Court in *Amcor Singen* recognized the importance of the specially designed features such as barrier and shelf life which do not lose their importance when the packaging material is printed.

The Court in *Amcor Singen* determined that the Formpack® product then at issue constituted "backed" aluminum foil pursuant to Heading 7607, and then conducted a GRI 3(b) essential character analysis involving the constituent materials of plastic and aluminum. The *Amcor Singen* Court determined that although plastic provided important functions, including a surface for printing, it was the aluminum which provided "the sole layer in Formpack® critical to serving as a barrier," which allows a finished package to protect pharmaceuticals for an extended time. *Id.* at 1304. The *Amcor Singen* Court determined that the aluminum foil layer provided the essence of the Formpack product. *Id.*

Plaintiff argues that *Amcor Singen* is not precedent, as it involves different entries of Formpack®. *See* Amcor Opp. Brief at 7. Nonetheless, as noted above, *Amcor Singen* is relevant and generally informative, as it discusses the importance of the constituent materials in the Formpack® product line based upon information provided by Formpack's manufacturer, Amcor Singen. While Amcor notes that the Formpack® entries at issue here are different from the Formpack® entries at issue in *Amcor Singen*, the attributes of the Formpack® products which make Amcor a leader in the pharmaceutical packaging market, are telling and common to the Formpack® products in this case. For example, Formpack's ability to be made into pharmaceutical packaging by being cold-formed into shapes such as tray cavities while maintaining unparalleled environmental barrier protection for the packages contents is a main feature. *See* Defendant's Exhibit 4 and Plaintiff's Exhibit 5 at p. 68, 69, 91, and 92. Thus, when weighing the essential nature and use of the printed Formpack products at issue here, it is

relevant to know how that product line is used and marketed which was discussed in the *Amcor Singen* case. *Amcor Singen*, at 1292. 1293 and 1300. Further the *Amcor Singen* case explains why the products in the Formpack® product line are considered to be "backed foil" and meet the terms of Heading 7607 HTSUS in that they comprise "Aluminum Foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm." *See* Point I above. Thus, the *Amcor Singen* decision is instructive to understanding the packaging materials and the classification analysis here.

## IV. SUBHEADING 7607.20.10 COVERS THE PRINT ON THE BACKED ALUMINUM FOIL PACKAGING MATERIALS

Having demonstrated that the flexible packaging materials fall squarely within heading 7607 as backed and printed foil, we turn to the analysis of the appropriate subheading. Classification of the printed backed foil falls within Subheading 7607.20.10 which provides for:

> Aluminum foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm: Backed: Covered or decorated with a character, design, fancy effect or pattern

Amcor disagrees and as an alternative secondary claim seeks classification under Subheading 7607.20.50, which provides for:

> Aluminum foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm: Backed: Other

Backed aluminum foil is classifiable pursuant to Subheading 7607.20, HTSUS, as demonstrated by the quoted subheadings. At issue is the eight-digit subheading level. Amcor claims that Subheading 7607.20.10 is incorrect because there could possibly be backed aluminum foil with printing that does not meet the tariff phrase, "covered or decorated with a character, design, fancy effect or pattern, but that U.S. Customs and Border Protection would never classify backed

aluminum foil that is printed pursuant to Subheading 7607.20.50, HTSUS.  There are several flaws with Amcor's argument.

First, Amcor fails to address the packaging materials at issue in this case, instead opting to create an irrelevant hypothetical situation.  Second, Amcor assumes an incorrect result as demonstrated by our 30(b)(6) witness testifying that it might be possible for a backed foil that is printed to be classified under 7607.20.50.  Amcor Opp. Brief at 20, 21; (Q.  "It seems like you're saying is it's possible that a back foil that's printed could go under 7607.20.50, but it would be based on a review of the product?"  A.  "Yes.").  As the 30(b)(6) witness testimony shows, Amcor is mistaken.  It is the Government's position that the print on the flexible aluminum packaging at issue meets the terms of the eight digit Subheading 7607.20.10, HTSUS and is properly classified therein.

The relevant terms of the subheading are "Covered or decorated with a character, design, fancy effect or pattern."  We explained how the printing on the packaging materials here satisfy a number of these terms.  Specifically, in our cross-motion brief at page 34 we asserted that while the word "character" in Subheading 7607.20.10, HTSUS, is reflected in the singular rather than the plural, however, the statute 1 U.S.C. § 1 allows statutory terms in the singular to include and apply to the plural, *i.e.* several persons, parties or things.[2]  Thus applying 1 U.S.C. § 1, to Subheading 7607.20.10 HTSUS allows for the provision to be read to state "[c]overed or decorated with [] character[s], design, fancy effect or pattern."  Amcor takes issue with 1 U.S.C. § 1 to allow the singular "character" to also encompass the plural "characters."  *See* Opp Brief at 22, 23.  To support its argument Amcor cites to *Meyer Corp v. United States,* 255 F.Supp.3d

<hr />

[2] 1 U.S.C. § 1 in its applicable part states, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular;

1348, 1357 (Ct. Int'l Trade 2017) where the Court disallowed the interpretation of the word "article" in a General System of Preferences (GSP) clause to be used in the plural. *See* Amcor Opp. Br. at 23. While the statute 1 U.S.C. § 1 was not raised or discussed in *Meyer*, the decision shows that the context of the GSP statute at issue in *Meyer* would not allow the interchange of the singular "article" with the plural "articles." This is because as the *Meyer* decision notes, the GSP determination at issue involved analyzing the value of a specific country's originating "article" as compared with the value of the other "articles" from other countries making up the set of goods for which GSP is sought. Thus, the context of the GSP statue at issue in *Meyer* showed that singular "article" and the plural "articles" in *Meyer* had a definite intended purpose. The same cannot be said of Subheading 7607.20.10, HTSUS. The context of that Subheading does not show that there was a specific purpose in the term "character" versus the term "characters." Amcor cites no such context in its brief besides just a conclusory argument that the singular term cannot be unintentional. According to 1 U.S.C. § 1, Subheading 7607.20.10, HTSUS may be construed as "[c]overed or decorated with [] character[s], design, fancy effect or pattern."

Moreover, as set forth in our cross-motion brief, the Formpack blister pack materials and pouches are therefore "covered" in that the cells of printed textual information are placed or spread all over their surface in a grid pattern, or at a minimum appear "here and there" on the surface of the materials. In particular, the materials are "covered" with a "character" or "characters" in that the cells of textual information consist of "printed or written letters or symbols," *i.e.* the printed drug or diagnostic device information and company logos.

Amcor also argues over many pages in its brief that our definitions have failed to delineate the difference between the relevant tariff terms "design" and a "pattern" or between

"covered" or "decorated." Plaintiff makes this conclusion citing to the introduction to our discussion as it related to the specific customer print on the packaging materials at issue, wherein we stated the subject materials are "covered or decorated with a character, design, fancy effect or pattern." Thereafter, we went on to explain how each element of the print at issue (and there are many elements - some being textual characters and some being decorative) met the different tariff terms, *i.e.* design, or fancy effect or pattern.

Amcor's argument fails to acknowledge that just because a "pattern" can be composed of a repeated "design," doesn't mean that the terms "design" and "pattern" were ill defined or that each term renders the other superfluous. Perhaps if plaintiff's entry included just one design covering a sheet and not a repeated design covering a roll, then the imported good would not meet the definition of both design and pattern (*i.e.* it would not be a pattern consisting of a repeated design). However, that is not the case. Amcor's imported packaging materials, are printed with repeating designs and therefore comprise a pattern. Just because an imported good meets the definitions of both "pattern" and "design" does not make the tariff terms mere surplusage.

Further plaintiff also fails to understand that a commercial print design can, but not always, include both informative text which covers the surface as well as decorative, eye pleasing elements. Therefore, covered or decorated are not mutually exclusive given the appropriate circumstances.

Accordingly, Amcor's imported backed and printed aluminum packaging materials are classifiable pursuant to Subheading 7607.20.10, HTSUS.

### V.    AMCOR'S FLEXIBLE ALUMINUM PACKAGING MATERIALS
###        ARE NOT LABELS

In an effort to classify its flexible aluminum packaging materials under Heading 4911,

Amcor now contends that its imported packaging materials are mere labels.  Amcor Opp. Br. at

15.  Despite the fact that Amcor's packaging materials meet the plain terms of the Heading 7607

and that printing is not contemplated by Note 1(d), Amcor seeks to rely on an EN to argue that

its high performance packaging material is simply a label.  As Amcor acknowledges, the 7607

ENs incorporate the ENs to 74.10 which provide that "foil remains in this heading whether or

not…printed" such that printed foil falls within Heading 7607.  Amcor, however, relies on the

EN that states that Heading 7607 does not apply to "printed foil labels being identifiable as

individual articles by virtue of their printing."  The packaging materials here are not identifiable

as an individual labels and the highly specialized features of the packaging materials are not

defined by the printing.  Specifically, plaintiff attempts to ignore the essence of what the

products at issue are, *i.e.* cold-formable pharmaceutical or diagnostic packaging capable of

protecting its intended contents from water, gas and sunlight and thus prolonging the contents'

shelf-life.  Even the name "Formpack" a derivative of the products' intended use as a formable

packaging product, belies plaintiff's argument.  The products at issue are not mere aluminum

tags carrying product information intended to be later affixed to a product or package.  The true

essence of the products at issue can be found in how Amcor markets, advertises and sells the

Formpack products at issue.  Amcor gave the following description in its interrogatory response:

> 6)      Describe in detail how each of the imported products is
> marketed, advertised, merchandised and sold in the United States.
>
> **RESPONSE:** **Plaintiff markets, advertises, and sells the subject
>                 products as Formpack®, a flexible packaging
>                 material that can be used to create an
>                 "aluminum blister pack" or pouch which**

> **provides the highest possible product protection against moisture, oxygen, light, etc. for doses of pharmaceutical products, medical devices, and diagnostics.**

Pl. Public Ex. 1 at Response 6.

Amcor's response above undermines its own argument that the products are mere labels. Not a word is stated in Amcor's response touting the product's label information. Why? Because Amcor's customers are not looking to buy mere labels. Instead Amcor's flexible aluminum packaging material is an industry leader because it is specialized and capable of forming blister packages and pouches while maintaining optimal environmental protections. *See also* Def. Exhibits 4 and 5 (Sales Brochures).

The fact that Amcor's packaging material also has some printed information on it does not make it classifiable pursuant to Chapter 49 as a label. The reason pharmaceutical and medical device clients buy Amcor's product lies in the materials' ability to protect their contents from environmental conditions while also capable of being physically formed into shapes including blisters or pouches. Pl. Ex. 7 at 28, 33, 34; Pl. Ex. 13 at 14-17.

Plaintiff incorrectly claims that the Government does not dispute that the subject packaging materials are labels. Amcor Opp. Br. at 16. That the packaging materials bear information that might be included on a label does not mean that Amcor's products are in essence a label, especially when taking into account the formability and high barrier features of the packaging materials. In our cross-motion brief we posited that Amcor's products cannot be considered standalone labels in that they are not mere aluminum tags printed with label information to be affixed upon some other product. Such aluminum foil tags are a type of standalone label which we referenced in our cross-motion brief. *See* Merriam-Webster's "1 a" definition of "label" is "a slip (as of paper or cloth) inscribed and affixed to something for

identification or description." *See* Def. Ex. 21, Merriam-Webster, https://www.merriamwebster .com/dictionary/label (last visited March 8, 2021). Plaintiff conflates our argument involving the word "standalone" claiming that we were arguing that true labels (not at issue here) could not be printed in sheets. *See* Amcor Opp. Brief at 16-19. Amcor is mistaken; true labels (not at issue here) can be printed in sheets if they are the type of articles identifiable as labels (slips or tags) and referenced in the ENs to Chapter 76 as articles which could be classified in Chapter 49. By describing labels as "standalone" we were identifying independent articles comprised of slips or tags of material containing product information that are intended later to be attached or affixed to a product or package.

In sum, the products at issue, being highly engineered backed aluminum pharmaceutical packaging, are not mere labels as contemplated by the ENs.

## VI. AMCOR'S FORMPACK IS NOT PROPERLY CLASSIFIED UNDER HEADING 4911 AS THE PRODUCTS DO NOT HAVE AN ESSENTIAL NATURE AND USE WHICH IS DETERMINED BY THE FACT OF ITS BEING PRINTED

Heading 4911 describes articles therein as "[o]ther printed matter, including printed pictures and photographs." Consideration of Amcor's packaging materials as a whole, inclusive of all of its specialized features, does not lead to classification of Formpack as "other printed matter." The following finding regarding Formpack by the Court in *Amcor Singen* is relevant:

> Plastic is also critical to inform the customer of what the blister pack contains: drug information may be printed on Formpack's outer layer of oPA film, *see* Def. Ex. 1 at 12, but it may not be printed on the foil layer. Transporting the good and informing the customer are both secondary to Formpack's principal function as a packaging material that acts as a barrier to protect the blister pack's contents.

*Amcor Singen* at 1305.

Amcor also asserts that we "attempt[] to narrowly redefine 'printed matter' for Chapter 49 and Heading 4911." Amcor Opp. Br. at 29. However, we are only following settled tariff analysis and examining the common meaning of the relevant tariff terms. Here, we utilized plaintiff's own cited dictionary source (Merriam-Webster's definition of "printed matter") which definition refers to printed matter being material eligible for "special rate" mail. The products at issue consisting of printed flexible packaging are not the type of material comprising "special rate" mail as noted above and are therefore not "printed matter" pursuant to plaintiff's own definition.

Amcor included in its moving brief the following definition of "printed matter":

> "Printed Matter," Merriam-Webster, https://www.merriam-webster.com/dictionary/ printed%20matter (last visited Jan. 1, 2020) (defining "printed matter" as "matter printed by any of various mechanical processes that is eligible for mailing at a special rate"), attached as Pl. Public Exhibit 17.

Plaintiff's own common meaning definition shows that it is dependent on whether such printed matter is eligible for mailing at a special rate. In order to understand the common dictionary meaning, one must determine whether or not printed matter is eligible for mailing at a special Post Office rate. We therefore determined that the United States Postal Service (USPS) recognizes "printed matter" as a classification of [special rate] mail (M-bag Mail) which includes newspapers, magazines, journals, books, sheet music, catalogs, directories, commercial advertising, and promotional matter. *See* Def. Ex. 18, USPS International Mail Manual at Subsection 261.21 (Incorporated by Reference at 39 CFR § 20.1). Plaintiff's argument that we are improperly usurping the common meaning with Government Agency definitions citing *Marubeni Am. Corp. v. United States*, 821 F. Supp. 152, 1529 (Ct. Int'l Trade 1993) is inapt. *See* Amcor Opp. Brief at 29.

Additionally, the Explanatory Notes for Chapter 49 confirm that the imported merchandise is not properly classifiable under Heading 4911. The ENs for Chapter 49, under the section identified as "General," provide in applicable part:

> With the few **exceptions** referred to below, this Chapter covers all printed matter of which the essential nature and use is determined by the fact of its being printed with motifs, characters or pictorial representations.

As we noted in our moving brief, the examples of "printed matter" which appear in Chapter 49, HTSUS help elucidate what is meant by the phrase "printed matter of which the essential nature and use is determined by the fact of its being printed with motifs, characters or pictorial representations." Heading 4911, HTSUS, does not exist in a vacuum and should be read together with the other HTSUS Headings and Subheadings to determine the scope of Chapter 49, HTSUS. There are a number of examples of products of the printing industry and "printed matter" that appear in Chapter 49 and are representative of when the "essential nature" of the product is imparted by the printing. While not repeating the examples in full, they include Dictionaries and Encyclopedias (Subheading 4901.91.00), Textbooks (Subheading 4901.99.00), Bibles (Subheading 4901.99.00), Art and Pictorial Books (Subheading 4901.99.00), Hardbound books (Subheading 4901.99.00), Newspapers, journals and periodicals (Heading 4902), etc.

In each and every example of a named item within Chapter 49, it is clear that *the essence of the product is the printed word, picture, or map*. As the aforementioned examples show, the "essential nature" of each of the identified products (*i.e.*, the common thread for products of Chapter 49) is the printing itself. For example, the essential nature of a dictionary is the printed definitions used by readers to discern the meaning of the enumerated words; the essential nature of the Bible is the printed psalms and passages used by the reader to reflect on their greater meaning; the essential nature of nautical charts is the printed information depicting safe channels

and buoys used by ship captains to guide ships safely. It is the printed communication itself that is the desired commodity and therefore the essence of the products of Chapter 49.

Unlike the examples of the Bible or nautical charts discussed above where the printing is the essential factor, for the imported merchandise at issue, it is the laminated aluminum, forming the blister tray or pouch and protecting the enclosed drugs and devices which provides the essential nature and use of the products. The flexible aluminum therefore is the essence of the packaging materials at issue, hence the name "Form" combined with "pack" *i.e*. Formpack. Further, it is the laminated aluminum packaging which is solely capable of providing the protection of the pharmaceutical drug or device from water, gases and sunlight thereby giving the products the desired shelf-life. Pl. Ex. 7 at 28, 34; Pl. Ex. 13 at 15, 16, 17. Moreover, the printing on the flexible aluminum material is not unique as it can be found elsewhere on the end use packaging. Specifically, the wording identifying the content of the blister tray or pouch, is also provided on the blister lidding material, the secondary outer boxed carton, and on the informational insert slips of the complete end consumer packaging. *See* Pl. Ex. 13 at 20, 21; Pl. Ex. 7 at 23-28. That is not to say that the printing on the Amcor merchandise is not important or that it is not required as part of a contractual term of a specific sale, but the printing is not what defines this particular merchandise.

For the same reasons stated in *Amcor Singen*, the *sine qua non* of Formpack at issue here is the laminated aluminum barrier material and not the printing. For the Court to adopt plaintiff's claimed classification, the record evidence would have to show that Formpack's customers purchase the laminated aluminum material for its printed message and not because it is the premier protective barrier packaging or that the packaging increases the shelf-life for drugs and medical diagnostic tools. The evidence shows that not to be the case.

**VII.    THE *AERO RUBBER* DECISION IS NOT PERSUASIVE WHEN CONSIDERING THE CLASSIFICATION OF AMCOR'S PACKAGING MATERIAL**

Amcor relies on the decision *Aero Rubber Co., Inc. v. United States*, 389 F. Supp. 3d 1296, 1300-08 (Ct. Int'l Trade 2019) (reviewing the proper tariff classification of printed silicon bands) to support its classification position.   However, *Aero Rubber* is not dispositive, and is distinguishable on several grounds.   First, the *Aero Rubber* Court engaged in a legal interpretation of Note 2 to Section VII, HTSUS, which is not applicable to Amcor's merchandise here.   *Id.* at 1304.   Next, the *Aero Rubber* decision involved a completely different product – silicon wrist bands with printing – which involved different HTSUS provisions and Notes. Additionally, *Aero Rubber* is a trial court decision and is not precedent for another action in the same court.   Further, the Court's holding that any printing that has a communicative purpose becomes part of the essence of the product is overly broad and not persuasive for our analysis.

While Plaintiff's discussion of *Aero Rubber* case does not go beyond repeating the findings from the decision, it does serve to highlight our major objection with the *Aero Rubber* decision which is set out in Plaintiff's brief as follows:

> Therefore, as Defendant recognized in its Motion, for articles that have a dual purpose (utilitarian function and communicating a message), **"[t]he court need not decide which use is primary: it suffices that the printing component has a communicative purpose and is thus not merely incidental."**   Such printed articles that communicate information are properly classified in Chapter 49. . . (citations omitted, emphasis in original).

Amcor Opp. Brief at 40.

The *Aero Rubber* Court's holding that communicative print eclipses the utilitarian use of the good when analyzing the essence of a product - cannot be correct as a conclusive test as that would lead to absurd results.   For example, no imported firearms would ever be classified in the tariff heading covering firearms (Chapter 93).   That is because the applicable regulations require

that firearms be engraved with a serial number, name of manufacturer, country of origin, model designation, caliber or gauge, name of importer, and city and state of importer. *See* 18 U.S.C. § 923(i), 27 C.F.R. § 478.92, 26 U.S.C. § 5842 and 27 C.F.R. § 479.102. That information required to be engraved on firearms is obviously communicative but it is not the essence of what the firearm is, is used for, or the reason a firearm is purchased. Similarly the covers of footballs and soccer balls are usually printed with names of manufacturers, league endorsements, and inflation instructions; will such markings foreclose their classification within Chapter 95 as footballs or soccer balls? Also, watch movements and cases are required to be marked with at least two of the following: 1) the country of manufacture, 2) the name of the manufacturer or purchaser; and 3) the number of jewels (in words) included in the movement. *See*, Chapter 91, Additional U.S. Note 4. Would watches cease to be classifiable in Chapter 91 as "watches and parts thereof" because of the printing? In fact every imported article of foreign origin or its container is required to be marked with the country of origin in such manner as to be conspicuous and understandable to the ultimate purchaser. *See* 19 U.S.C. § 1304 and 19 CFR § 134.11. Therefore, any communicative printing should not transform articles into printed matter.

Application of *Aero Rubber* in the absolute as advocated by Amcor would foreclose the classification of firearms, footballs. soccer balls and watches from their aforementioned *eo nomine* provisions in the HTSUS in favor of the "printed matter, other" provision of Chapter 49 Such banal communicative print on firearms, footballs soccer balls, watches, and all country of origin marked goods are not the essence of these articles. Following the holding of *Aero Rubber* cited above, where communicative print always eclipses the utilitarian use of the good when analyzing the essence of a product, will only lead to the improper gutting of many tariff

provisions in favor of Heading 4911.  For these reasons the *Aero Rubber* decision is not persuasive for the classification analysis required here.

## **CONCLUSION**

For the reasons contained in our moving papers and in this reply memorandum, we respectfully request that judgment be entered denying Amcor's motion for summary judgment, granting the Government's cross-motion for summary judgment, and dismissing this action.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:    JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

| | |
|---|---|
| *Of Counsel* | /s/Edward F. Kenny |
| Paula S. Smith | EDWARD F. KENNY |
| Assistant Chief Counsel | Senior Trial Counsel |
| Office of Assistant Chief Counsel | Civil Division, Dept. of Justice |
| International Trade Litigation | Commercial Litigation Branch |
| U.S. Customs and Border Protection | 26 Federal Plaza – Suite 346 |
| | New York, NY 10278 |
| | Attorneys for Defendant |
| Dated: July 12, 2021 | Tel. (212) 264-0480 |

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN, JUDGE**

_____

|  |  |
|---|---|
| AMCOR FLEXIBLES KREUZLINGEN AG. | ) |
|  | ) |
| Plaintiff | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

Court No. 16-00193

_____

## CERTIFICATE OF COMPLIANCE

I, EDWARD F. KENNY, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is the attorney responsible for the Memorandum In Reply To Plaintiff's Opposition to Defendant's Cross-Motion For Summary Judgment, relying upon the word count feature of the word processing program used to prepare the response, certify that this memorandum complies with the word count limitation under the Court's chambers procedures and contains 6,996 words.

/s/ Edward F. Kenny
Edward F. Kenny

Dated: July 12, 2021