Slip Op. 22-15

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AMCOR FLEXIBLES KREUZLINGEN AG,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | **Before: Gary S. Katzmann, Judge**<br>Court No. 16-00193 |

## OPINION

[The court grants Plaintiff's motion for summary judgment.]

Dated: *February 22, 2022*

Wm. Randolph Rucker, Faegre Drinker, Biddle & Reath LLP, of Chicago, IL, argued for Plaintiff Amcor Flexibles Kreuzlingen Ag.

Edward F. Kenny, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Defendant United States. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and Justin R. Miller, Attorney-in-Charge. Of counsel on the brief was Paula S. Smith, Office of Assistant Chief Counsel, U.S. International Trade Litigation, U.S. Customs and Protection, of New York, N.Y.

  Katzmann, Judge: This case involves the tariff classification of Formpack, a flexible packaging material imported by Plaintiff, Amcor Flexibles Kreuzlingen AG ("Amcor"), and ultimately intended for use in pharmaceutical product and medical device packaging. Formpack consists of thin, soft-tempered aluminum foil with a heat-sealable coating on one side and plastic film lamination featuring product, brand, weight and usage instructions on the reverse. It was classified by U.S. Customs and Border Protection ("CBP") under Subheading 7607.20.10 of the

Harmonized Tariff Schedule of the United States ("HTSUS")[1] as backed aluminum foil "covered or decorated with a character, design, fancy effect or pattern." Amcor now seeks review of CBP's classification decision, and argues that Formpack is properly classified under Subheading 4911.99.80 as "other printed matter, including printed pictures and photographs" or alternatively under Subheading 7607.20.50 as "other" backed aluminum foil. Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. at 2–3, Jan. 4, 2021, ECF No. 56 ("Pl.'s Br."). The Government opposes Plaintiff's motion and argues that the printed Formpack was properly classified by CBP. Def.'s Mem. in Opp'n to Pl's. Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. at 1, Apr. 1, 2021, ECF No. 63 ("Def.'s Br."). The court concludes that Formpack is properly classified within Subheading 7607.20.50 as "other" backed aluminum foil, and accordingly grants Plaintiff's motion for summary judgment and denies the Government's cross-motion.

## BACKGROUND

### I.    *Legal and Regulatory Framework for Customs Classification*

Merchandise imported into the United States is classified under the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. In general, the HTSUS's primary headings describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. Proper classification is governed by the General Rules of Interpretation ("GRIs") of the HTSUS as well as the Additional U.S. Rules of Interpretation. See Roche Vitamins, Inc. v. United States, 772 F.3d 728, 730 (Fed. Cir. 2014) (citing Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998)).

---

[1] References to "Chapter," "Heading" or "Subheading" herein refer to the HTSUS.

Goods imported into the customs territory of the U.S. must first be "entered," or in other words declared to CBP. What Every Member of the Trade Community Should Know About: Tariff Classification 8, U.S. Customs and Border Protection (May 2014) https://www.cbp.gov/sites/default/files/documents/icp017r2_3.pdf (last visited February 18, 2022). At entry, the importer is obliged to use "reasonable care" to propose an accurate classification and valuation of the goods. Id. CBP is then responsible for determining the final classification and valuation of the goods through a process called "liquidation of the entry." Id. After liquidation of the entry, an importer may seek administrative review of a classification decision by protesting the decision to CBP, which results in an internal review of the decision by a higher level of authority. Id. at 39. If the importer is unsatisfied with the decision resulting from its protest, it may then, as here, seek judicial review. Id.

Judicial review of classification decisions involves two steps. First, the court determines the proper meaning of the terms used in the HTSUS provision, which is a question of law. See Link Snacks, Inc. v. United States, 742 F.3d 962, 965 (Fed. Cir. 2014) (citing Warner-Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005)). Second, the court determines whether the subject merchandise falls within the description of those terms, which is a question of fact. Id. (citing Orlando Food Corp., 140 F.3d at 1439). Where, as here, there is no dispute regarding the nature of the merchandise, "the two-step classification analysis 'collapses entirely into a question of law.'" Id. at 965–66 (quoting Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006)). In reviewing a classification decision, the court must "consider whether the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

To determine the meaning of an HTSUS provision, the court applies the GRIs in numerical order, beginning with GRI 1 and reaching subsequent GRIs if analysis under the preceding GRI does not yield proper classification of the subject merchandise.  See Link Snacks, Inc., 742 F.3d at 965; Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999).  "The HTSUS is designed so that most classification questions can be answered by GRI 1."  Telebrands Corp. v. United States, 36 CIT 1231, 1235, 865 F. Supp. 2d 1277, 1280 (2012), aff'd 522 Fed. Appx. 915 (Fed. Cir. 2013).  Under GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes."  GRI 1.  Therefore, "a court first construes the language of the heading, and any section or chapter notes in question."  Orlando Food Corp., 140 F.3d at 1440.

In practice, the terms employed by the HTSUS are "construed according to their common and commercial meanings, which are presumed to be the same."  Carl Zeiss, Inc., 195 F.3d at 1379 (citing Simod Am. Corp. v. United States, 872 F.2d 1572, 1576 (Fed. Cir. 1989)).  The court therefore defines HTSUS terms by relying on its own understanding and, if necessary, by "consult[ing] lexicographic and scientific authorities, dictionaries, and other reliable information sources."  Id. at 1379 (citation omitted).  If more information is needed, the court may also consult the Harmonized Commodity Description and Coding System's Explanatory Notes ("Explanatory Notes" or "ENs").  See StoreWALL, LLC v. United States, 644 F.3d 1358, 1362–63 (Fed. Cir. 2011).  Although the "Explanatory Notes are not legally binding, [they] may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision."  Roche Vitamins, Inc., 772 F.3d at 731 (citing Motorola, Inc. v. United States, 463 F.3d 1357. 1362 (Fed. Cir. 2006)).

## II.　　Factual and Procedural History

The merchandise at issue here entered the United States from June 2011 to December 2013 and was liquidated as entered from April 2012 to October 2014 under Subheading 3921.90.40. Def.'s Br. at Ex. 1. Between August 2012 and February 2015, Plaintiff timely filed seven protests challenging this classification and arguing that Formpack should instead be classified as "backed foil" under Subheading 7607.20.50. Am. Compl. ¶ 4, ECF No. 34, July 9, 2019; Am. Ans. ¶ 4, ECF No. 35, July 23, 2019. After the decision of the Court of Appeals for the Federal Circuit in Alcan Food Packaging v. United States, 771 F.3d 1364 (Fed. Cir. 2014), upholding the CIT's ruling that flexible food packaging materials consisting of aluminum foil sandwiched between either three or four layers of plastic were properly classified as plastics under Subheading 3921.90.40, Plaintiff submitted additional letters to CBP arguing that Formpack was distinguishable from the packaging materials in Alcan Food Packaging. Id.; Def.'s Br. at 3, Ex. 1; see also Alcan Food Packaging, 771 F.3d at 1364. However, in April 2016, CBP denied Amcor's protests on the basis of the Federal Circuit's decision. Def.'s Br. at 3.

On September 27, 2016, Plaintiff commenced this suit to challenge the denial of its protests. Summons, ECF No. 1. After learning during discovery that the Formpack at issue consisted of foil with a layer of plastic film printed using a rotogravure machine, CBP revised its classification to Subheading 7607.20.10, which encompasses backed aluminum foil, "whether or not printed," and "covered or decorated with a character, design, fancy effect or pattern." Def.'s Br. at 3–4. Plaintiff again disagreed, and following this court's decision in Aero Rubber Company, Inc. v. United States, 43 CIT __, 389 F. Supp. 3d 1296 (2019) in May 2019 -- which classified silicone bands printed with text as "printed matter" rather than "articles of plastic" -- amended its complaint to include a claim for classification as "other printed matter" under Subheading

4911.99.80. Am. Compl. at 3–4. On January 4, 2021, Plaintiff filed its motion for summary judgment. Pl.'s Br. The Government filed its cross-motion for summary judgment on April 1, 2021. Def.'s Br. Plaintiff responded in opposition to the Government's cross-motion on June 7, 2021, and the Government replied on July 12, 2021. Pl.'s Resp. to Mot. for Summ. J., ECF No. 68 ("Pl.'s Resp."); Def.'s Reply Mem. in Further Supp. of Def.'s Cross-Mot. for Summ. J., ECF No. 71 ("Def.'s Reply"). On November 1, 2021, the court issued a letter providing questions for oral argument. Ct.'s Letter re Questions for Oral Arg., ECF No. 75. The parties filed responses on November 12, 2021 in anticipation of argument. Def.'s Resp. to the Ct.'s Written Qs. Directed to the Gov't for Oral Arg., ECF No. 76; Pl.'s Resp. to the Ct.'s Qs. for Oral Arg. Directed to Amcor Flexibles Kreuzlingen AG, ECF No. 77. Oral argument was held on November 15, 2021, and the parties filed supplemental post-argument submissions thereafter. Oral Arg., ECF No. 79; Pl.'s Post-Arg. Submission, Nov. 19, 2021, ECF No. 80; Def.'s Post-Hearing Submission, Nov. 19, 2021, ECF No. 81. The parties now request that the court find as a matter of law that Formpack falls within their assessed classification.

## JURISDICTION AND STANDARD OF REVIEW

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(a), which provides that the court "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." The court reviews classification decisions de novo, 28 U.S.C. § 2640(a)(1), and will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact [such that] the movant is entitled to judgment as a matter of law," USCIT R. 56(a). To raise a genuine issue of material fact, a party cannot rest upon mere allegations or denials and must point

to sufficient evidence for the claimed factual dispute so as to require resolution at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

## DISCUSSION

Plaintiff contends that: (i) pursuant to GRI 1, Formpack is properly classified as "other printed matter" under Subheading 4911.88.80; and in the alternative, (ii) if this court finds that the merchandise falls under Heading 7607, it should be classified within Subheading 7607.20.50 as "other" backed aluminum foil. By contrast, the Government argues that Formpack should be classified within Subheading 7607.20.10 as backed aluminum foil that is "[c]overed or decorated with a character, design, fancy effect or pattern."[2]

For the reasons stated below, the court concludes that Formpack is properly classified under Subheading 7607.20.50. Accordingly, the court grants Plaintiff's motion for summary judgment and denies the Government's cross-motion.

### I. *Formpack is Properly Classified Under Heading 7607, and Not Heading 4911.*

Plaintiff argues, citing Aero Rubber, that Formpack is properly classified under Heading 4911 because it features printing that is indispensable to its use, and its communicative purpose therefore predominates over its function as packaging materials. Pl.'s Br. at 24–28. Plaintiff further argues both that the Formpack has been "transformed" through printing from backed foil into printed matter, Pl.'s Resp. at 9–11, and that the Formpack materials are properly considered aluminum foil labels such that they would be excluded from Heading 7607, Pl.'s Br. at 30. The Government responds that while Formpack is printed, the "essence of the Formpack products at issue is the laminated aluminum foil which provides the environmental barrier that holds, protects

---

[2] As neither party currently supports classification under Heading 3921, under which the goods were entered, the court does not consider this classification further.

and extends the shelf-life of the enclosed drug or diagnostic device." Def.'s Br. at 21. The court concludes that the printing on the Formpack materials at issue neither defines its essential nature and use, nor excludes it from classification as backed aluminum foil, and that printed Formpack is therefore properly classified under Heading 7607.

The court's previous decision in Amcor Flexibles Singen Gmbh v. United States, 44 CIT __, 425 F. Supp. 3d 1287 (2020) ("Amcor Singen") is instructive. In Amcor Singen, the court considered a challenge to CBP's classification of a flexible aluminum foil packaging material -- in fact, another type of Formpack, albeit not printed -- and determined that it was properly classified under Heading 7607. Id. at 1301, 1306. The question before the court is therefore whether the printing of product, brand, weight and usage instructions on the Formpack materials transforms merchandise otherwise classifiable as packaging material under Heading 7607 into "printed matter" within the ambit of Heading 4911. For the following reasons, it does not.

First, the law does not require classification under Heading 4911. Plaintiff's position that "whether or not printed" refers only to printing that is incidental to the use of the good relies on a misapplication of the court's decision in Aero Rubber. See Pl.'s Br. at 21; Aero Rubber, 389 F. Supp. 3d at 1302–03.[3] In Aero Rubber, the court found that silicon bands that bore a company's name and logo served a communicative purpose sufficient to bring them under Heading 4911. Id. at 1307–10. Plaintiff argues by analogy that its flexible packaging materials -- although used to package goods -- are also used to communicate critical information about the products contained in the package, and therefore likewise fall within the ambit of Heading 4911. Pl.'s Br. at 27; Pl.'s Resp. at 40. In so doing, Plaintiff argues that, under Aero Rubber, the test for determining whether

---

[3] This is not to say that printing could never render aluminum foil properly classifiable under Heading 4911 -- simply that such printing would be subject to a different standard than that set forth in Note 2 to Section VII.

the subject packaging materials are "printed matter" is simply whether the printing is "merely incidental to the primary use of the goods." Pl.'s Resp. at 10 (citing Aero Rubber, 389 F. Supp. 3d at 1303). Plaintiff is incorrect. The "merely incidental" standard is not applicable to the Formpack material at issue here because it is drawn from a section note that applied only to a particular subset of goods; namely, "plastics, rubber and articles thereof." Aero Rubber, 389 F. Supp. 3d at 1303. Accordingly, Aero Rubber's classification of printed plastic articles does not suggest that any article with printing "not merely incidental" to its primary use must be classified as "printed matter" under Heading 4911 -- merely that plastic and rubber articles with non-incidental printing constitute printed matter. Plaintiff's foil packaging materials are therefore not implicated.

Second, the Chapter 76, Note 1(d) priority rule does not prevent classification under Heading 7607. In relevant part, this rule states that:

> Headings 7606 and 7607 apply, inter alia, to plates, sheets, strip and foil with patterns (for example, grooves, ribs, checkers, tears, buttons, lozenges) and to such products which have been perforated, corrugated, polished or coated, provided that they do not thereby assume the character of articles or products of other headings.

Alcan Food Packaging, 771 F.3d at 1368. Plaintiff contends, relying on Alcan Food Packaging, that because the Formpack materials otherwise classifiable under Heading 7607 have undergone further processing causing them to "assume the character of articles or products of other headings" -- i.e., of printed matter -- Note 1(d)'s priority rule requires that they be classified *as* printed matter under Heading 4911. Pl.'s Resp. Br. at 12–13. Plaintiff is incorrect. In this case, unlike Alcan Food Packaging, the printing has not caused the flexible packaging materials to assume the character of Heading 4911's printed matter. As the court has previously noted, to take on some characteristics or properties of another heading is not to "assume the character" of that heading in such a way as would trigger the priority rule. Amcor Singen, 425 F. Supp. 3d at 1301. The court

therefore concludes that for Formpack to "assume the character" of printed matter, the process of printing information on the backed aluminum foil would have to alter the product so significantly that the printed component "subsume[s] the foil -- to the point where the good could no longer be described as foil." Id. That is not the case here. [4]

Finally, the Formpack materials before the court are not, as Plaintiff argues, "printed aluminum foil labels" such that they are excluded from Heading 7607 and properly classified under Heading 4911. Pl.'s Br. at 30. The ENs to Heading 7607 state that the heading does not cover "printed aluminum foil labels being identifiable individual articles by virtue of the printing." EN 76.07(c); Pl.'s Br. at 17, Ex. 22. A "label" is, according to Merriam Webster, "a slip (as of paper or cloth) inscribed and affixed to something for identification or description." Label, Merriam Webster, https://www.merriam-webster.com/dictionary/label (last visited Feb. 18, 2022). A label does not ordinarily contain the item it identifies, but rather is affixed, applied, or otherwise attached to the item to "identif[y] or descri[be] it." Id. While the Formpack materials are printed and constructed of aluminum foil, they are not affixed to the items they identify or describe. See Pl.'s Br. at 4–5. Rather, they are rolls of printed foil "used to package pharmaceutical products" ranging from pills to medical devices, and therefore surround and contain the identified products. Id. at 4. Accordingly, given the ordinary meaning of "label," this argument, too, is rejected.

---

[4] The Government also argues that Note 1(d) does not apply because "perforated, corrugated, polished or coated" is a finite list of processes, which does not include printing. Def.'s Br. at 25. While Amcor counters by pointing out that the Flexalcon at issue in Alcan Food Packaging did not fit within one of these enumerated processes and yet Note 1(d)'s priority rule still applied, Pl.'s Resp. at 14, the Government responds that a foil product laminated with plastic -- like the product at issue in Alcan Food Packaging -- is "coated" such that Note 1(d)'s priority rule was applicable. Def.'s Reply at 7–8. Plaintiff further responds by pointing to the Chapter 72 General ENs to support the proposition that "coating" could also encompass "surface printing." Pl.'s Resp. at 14. Ultimately, because the court finds that the subject merchandise does not "assume the character" of printed matter, this line of argument is not persuasive.

The court finds persuasive the reasoning set out in Amcor Singen, and concludes that the printed Formpack at issue is properly classified under Heading 7606. Considering the "essential nature" of the non-printed Formpack under GRI 3(b), the Amcor Singen court found that the aluminum foil portion of Formpack "imparts a defining characteristic that is fundamental to its commercial identity." 425 F. Supp. 3d at 1305 (citing Swimways Corp. v. United States, 42 CIT __, __, 329 F. Supp. 3d 1313, 1323 (2018)). The court there went on to state that the "ability [of the Formpack] to isolate the contents of the blister package from its external environment is the precise feature that is sought by customers when selecting blister package material." Id. Even though Formpack's plastic backing "impart[ed] critical functions" to the foil, the Amcor Singen court concluded that the flexible aluminum foil was ultimately more fundamental, and more essential, to the packaging material because it was the foil which ultimately provided the impermeable barrier required in pharmaceutical packaging. Id. at 1305–06. Here again, even though the court acknowledges that "Amcor's customers could not use [Formpack] without the printing" and that "[i]f the printing were wrong or damaged, Amcor's customers would reject the product," the court finds that the essential function of Formpack is to provide an impermeable protective barrier for the packaging of pharmaceutical products, not to label those products. Pl.'s Br. at 6. Although Formpack's plastic coating and specific printing are no doubt required by Plaintiff's customers, they do not change the essential nature of the merchandise such that printed Formpack no longer constitutes backed aluminum foil subject to Heading 7607.

## II.   *Formpack is properly classified under Subheading 7607.20.50.*

Having found that Formpack is properly classified under Heading 7607, the court next considers which subheading within 7607 is appropriate. Anticipating that its argument for classification under Heading 4911 might be rejected, Plaintiff argues in the alternative that its

flexible packaging materials should be classified as "other" backed aluminum foil under Subheading 7607.20.50, which encompasses:

> 7607　Aluminum foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm:
>
> 7607.20　　　　　　　Backed:
>
> 7607.20.50　　　　　　　　　　Other .......................................... free

Pl.'s Br. at 3. Subheading 7607.20.50 is a "basket" or residual provision, meaning it is "intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading." <u>EM Indus., Inc. v. United States</u>, 22 CIT 156, 165, 999 F.Supp. 1473, 1480 (1998). The Government, on the other hand, argues for a such a specific subheading -- Subheading 7607.20.10 -- which encompasses:

> 7607　Aluminum foil (whether or not printed, or backed with paper, paperboard, plastics or similar backing materials) of a thickness (excluding any backing) not exceeding 0.2 mm:
>
> 7607.20　　　　　　　Backed:
>
> 7607.20.10　　　　　　　　　　Covered or decorated with a character, design, fancy effect or pattern ........................ 3.7%

Def.'s Br. at 15.

As no other specific subheadings exist under the broader "backed aluminum foil" subheading of 7607.20, the question before the court is whether the flexible packaging materials at issue are "covered or decorated with a character, design, fancy effect or pattern." If so, Subheading 7607.20.10 is the correct classification; if not, the merchandise falls by default into Subheading 7607.20.50. Because the key terms of 7607.20.10 are not defined in the HTSUS or

the ENs, the court must define the terms for itself.  To define HTSUS tariff terms, the court relies on its own understanding of the terms and may also "consult lexicographic and scientific authorities, dictionaries, and other reliable information sources."  Carl Zeiss, Inc., 195 F.3d at 1379.

Plaintiff and its expert witness argue persuasively that in light of 7607.20.10's language and the relevant chapter and heading notes, the subheading is meant to include only printing that is decorative in nature, and not communicative text.  Pl.'s Br. at 32–38, Ex. 8:57–52; Pl.'s Resp. at 24–25.  Whether or not the products are "covered" by printing, the printed component cannot be described as "a character, design, fancy effect or pattern" as contemplated by Subheading 7607.20.10. [5]  For this reason, the court concludes that Formpack is properly classified under Subheading 7607.20.50.

In so doing, the court rejects the Government's contention that the printing on the Formpack at issue represents a repeating "design" or "pattern" that "covers" or "decorates" the products.  Def.'s Resp. at 14.  First, that printing may reflect "an underlying scheme" is not sufficient to render it a design or pattern.  Def.'s Br. at 32 (quoting Design, Merriam-Webster, https://www.merriam-webster.com/dictionary/design (last accessed February 18, 2022)).  Any printed material must be designed before it is printed; however, having been designed is not the same as being "a design," as contemplated by the subheading.

---

[5] The court finds it self-evident that the products are not "decorated" because their printed component is intended to convey essential information, not to ornament the foil.  Decorated, Merriam-Webster, https://www.merriam-webster.com/dictionary/decorated (last accessed February 18, 2022); see Pl.'s Br. at 34–36.  The court is less convinced that "covered" means "totally covered by ink with no nonimage space," as Plaintiff and its expert witness allege.  See id. at 33–34 (citing Ex. 11:20).  Nevertheless, as Plaintiff succeeds on the former argument, the latter need not be addressed at this time.

Second, the example patterns enumerated by Note 1(d) to Chapter 76 -- specifically, "grooves, ribs, checkers, tears, buttons, lozenges" -- each involve repeating geometric or abstract designs that are decorative in nature, and bear little similarity to repeating blocks of informative text. Note 1(d) to Chapter 76. Indeed, the note goes on to separately address foil with functional alterations, such as perforations, which might conceivably repeat across a foil sheet but are nevertheless not listed as patterns. Id. Thus, although the Government maintains that the repetition of product information across the uncut roll on which the packaging materials are printed and imported represents a pattern, Def.'s Resp. at 14, the court agrees with Plaintiff that "pattern" and "design," as contemplated by Subheading 7607.20.10 do not encompass such labeling information, see Pl.'s. Br. at 38. The information printed on the subject merchandise is repeated to facilitate efficient production, and not to create a design or pattern. Id. Indeed, as Plaintiff notes, the Formpack is intended specifically to be cut into "individual packages such that each package conveys the printed information," rather than used in such a way that the printed information is repeated more than once. Pl.'s Br. at 4.

Third, the court is not persuaded that the Formpack at issue is "covered" with a "character" or "characters" simply because the repeating blocks of informative text themselves consist of "printed or written letters or symbols." Def.'s Resp. at 13. While, as a general interpretive principle, words in the singular should be read to encompass the plural, this is not the case where "context indicates otherwise." Niz-Chavez v. Garland, 141 S.Ct. 1474, 1482 (2021). The context does so here. Not only do the example patterns listed in Note 1(d) suggest that "pattern" is intended to refer to decorative patterns in the chapter broadly, but the other categories provided in Subheading 7607.20.10 -- design, fancy effect or pattern -- are decorative rather than functional in nature. Reading "character" to refer to a single, repeating, decorative character, and not to a series

of characters comprising informative text, is therefore strongly suggested by the context of the provision and the chapter as a whole.

Finally, the "whether or not printed" language in the main heading is significant. The fact that this phrase appears in the main heading, while the word "printed" does not appear anywhere in Subheading 7607.20.10, suggests that some but not all printed foil falls within this subheading. As the Government notes, printed foil could avoid classification under 7607.20.10 by featuring a singular trademark or lot number upon an otherwise blank roll. <u>See</u> Def.'s Post Hearing Submission at 1–2. However, anything beyond a singular symbol or number seems, under the Government's proposed reading, to result in classification under Subheading 7607.20.10 as foil printed with a pattern and "covered" by printing appearing "here and there" across the roll. The court finds this proposed reading of Subheading 7607.20.10 to be overly broad. While foil covered with a decorative design -- such as novelty kitchen foil -- would certainly fall within the terms of 7607.20.10, foil that is simply printed with informative product information -- such as the flexible packaging materials in this case -- does not. Therefore, as it cannot qualify within the more-specific subheading of 7607.20.10, Formpack is properly classified under the residual subheading: 7607.20.50.

## CONCLUSION

For the reasons set forth above, the court finds that Formpack is properly classified under Subheading 7607.20.50. The court accordingly grants Plaintiff's motion for summary judgment and denies the Government's cross-motion.

**SO ORDERED.**

                                                            <u>/s/   Gary S. Katzmann</u>
                                                            Gary S. Katzmann, Judge

Dated: <u>February 22, 2022</u>
         New York, New York